IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–00191–EWN–MJW

KIMBERLY BREAUX,

      Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation,

      Defendant.

---

Civil Action No. 04–cv–00539–EWN

LORI CHAMBERS,
CRYSTAL HAMRICK,
MARTIN PERSICHITTE,
ROBERT W. REFFEL, and
MICHAEL WHITEHEAD,

      Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation,

      Defendant.

---

**ORDER AND MEMORANDUM OF DECISION**

---

This is an insurance case.  Plaintiff Kimberly Breaux alleges that by failing to disclose, offer, and provide certain personal injury protection ("PIP") coverage, Defendant American Family Mutual Insurance Company (1) violated the Colorado Auto Accident Reparations Act ("CAARA"), specifically Colorado Revised Statute sections 10–4–710 and 10–4–706(4)(a); (2) breached her insurance contract; (3) breached her insurance contract in bad faith; and (4) breached the implied covenant of good faith and fair dealing.  This matter is before the court on (1) "Plaintiff's Motion for Partial Summary Judgment," filed November 30, 2004; and (2) Defendant American Family Mutual Insurance Company's Motion for Partial Summary Judgment," filed November 30, 2004.[1]  Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

## FACTS

*1.*     ***Factual Background***

*a.*       ***Overview of CAARA***

Before addressing the issues raised in this case, I review and interpret the relevant portions of CAARA.[2]  Repealed in 2003, CAARA was Colorado's No-Fault Insurance Act. *Clark v. State Farm Mut. Auto. Ins. Co.*, 292 F. Supp. 2d 1252, 1258 (D. Colo. 2003) (hereinafter "*Clark II*") (citing *Nationwide Mut. Ins. Co. v. United States*, 3 F.3d 1392, 1394) (10th Cir. 1993).  CAARA governed the legal rights of automobile accident victims and their

---

[1] Because the instant matter was briefed by the parties prior to the consolidation of Civil Action No. 04–cv–00191 with Civil Action No. 04–cv–00539, I refer in this order to Plaintiff Kimberly Breaux rather than to all of the Plaintiffs.

[2] CAARA comprised Colorado Revised Statutes sections 10–4–701 to 10–4–726, *repealed by* Laws 1997, H.B. 97–1209, § 8, effective July 1, 2003.  *See* Colo. Rev. Stat. § 10-4-726 (effective July 1, 2003).  Because CAARA has been repealed, I cite to the 2002 version of Colorado Revised Statutes.

insurers in Colorado and required that motor vehicle owners maintain minimum insurance coverage on their vehicles, including no-fault PIP coverage. *See* Colo. Rev. Stat. § 10–04–705 (2002); *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 552 (Colo. App. 1998). The required mandatory minimum PIP coverage provided for reasonable and necessary medical care, rehabilitative care, lost wages, and death benefits in the event of an accident without regard to fault. *See* Colo. Rev. Stat. §§ 10–04–706(1)(b)–(e) (2002). In relevant part, CAARA required insurers to offer coverage providing for:

> [c]ompensation without regard to fault, up to a limit of fifty thousand dollars per person for any one accident, for payment of all reasonable and necessary expenses for medical . . . and nonmedical remedial care and treatment . . . performed within five years after the accident for bodily injury arising out of the use or operation of a motor vehicle;

Colo. Rev. Stat. § 10–04–706(1)(b)(I)

> [c]ompensation without regard to fault up to a limit of fifty thousand dollars per person for any one accident within ten years after such accident for payment of the cost of rehabilitation procedures or treatment and rehabilitative occupational training necessary because of bodily injury arising out of the use or operation of a motor vehicle; [and]

Colo. Rev. Stat. § 10–4–706(1)(c)(I)

> [p]ayment of benefits equivalent to one hundred percent of the first one hundred twenty-five dollars of loss of gross income per week, seventy percent of the next one hundred twenty-five dollars of loss of gross income per week, and sixty percent of any loss of gross income per week in excess thereof, with the total benefit under this subparagraph (I) not exceeding four hundred dollars per week, from work the injured person would have performed had he not been injured during a period commencing the day after the date of the accident, and not exceeding fifty-two additional weeks.

Colo. Rev. Stat. § 10–4–706(1)(d)(I).

CAARA also required that insurers provide and offer an option for increased PIP coverage in exchange for higher premiums. *See* Colo. Rev. Stat. § 10–04–710(1); *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1238 (10th Cir. 2003) (hereinafter "*Clark I*"). Specifically, CAARA required that:

> Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10–4–706, at the option of the named insured:
> (I) Compensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitation; or
> (II) Compensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitation and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

Colo. Rev. Stat. § 10–04–710(2)(a)

The *Brennan* court noted that the "directive of [section] 10–4–710 is to the insurer, not the insured: all that is required is that the insurer offer these extended benefits." *Brennan*, 961 P.2d at 554. Colorado Revised Statutes section 10–4–710(2)(b) authorized insurers to place an aggregate limit of $200,000 on the total amount payable for complying policies. Colo. Rev. Stat. § 10-4-710(2)(b).

**b.      *Defendant's Insurance Policies and Practices***

Defendant is a Wisconsin corporation licensed to do business in Colorado, and was at all times pertinent engaged in the business of selling automobile insurance policies in the State of Colorado.  (Compl. and Jury Demand ¶ 4 [filed Feb. 2, 2004] [hereinafter "Compl."], *admitted at* Def. Am. Family Mut. Ins. Co.'s Answer, Affirmative Defense, and Jury Demand ¶ 4 [Filed Mar. 2, 2004] [hereinafter "Def.'s Answer"].)  On or about February 16, 2000, Plaintiff

purchased a Colorado automobile insurance policy from Defendant.  (Def.'s Opening Br. in Supp. of Def. Am. Family Mut. Ins. Co.'s Mot. for Partial Summ. J., Statement of Undisputed Material Facts ¶ 1 [filed Nov. 30, 2004] [hereinafter, "Def.'s Br."]; *admitted at* Pl.'s Resp. to Am. Family's Mot. for Partial Summ. J., Resp. to Statement of Undisputed Material Facts, Statement of Undisputed Material Facts ¶ 4 [filed Jan. 21, 2005] [hereinafter "Pl.'s Resp."].)[3] Defendant was bound by the obligations and duties imposed by CAARA at the time Plaintiff's contract was created.  (Pl.'s Mot. for Partial Summ. J., Resp. to Statement of Undisputed Material Facts, Statement of Undisputed Material Facts ¶ 1 [filed Nov. 30, 2004] [hereinafter "Pl.'s Br."]; *admitted at* Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., Statement of Undisputed Material Facts ¶ 1 [filed Jan. 24, 2005] [hereinafter "Def.'s Resp."].)  At the time

---

[3] Plaintiff did not follow my procedural rules in responding to Defendant's motion for partial summary judgment.  My procedural rules require that:

> [a]ny party opposing the motion for summary judgment shall in a section of the brief styled Response to Statement of Undisputed Facts, admit or deny the asserted material facts set forth by the movant.  The admission or denial shall be made in separate paragraphs numbered to correspond to movant's paragraph numbering.  Any denial shall be accompanied by a brief factual explanation of the reasons for the denial and a specific reference to material in the record supporting the denial.

(*See* Practice Standards — Civil, Special Instructions Concerning Motions for Summary Judgment ¶ 4.)  Plaintiff did not expressly admit or deny any of Defendant's facts, but instead offered new and different facts of her own in a section called "Response to Undisputed Material Facts" with subsections designated as "Disputed Material Facts" and "Undisputed Material Facts."  Plaintiff's disregard for my procedural rules is surprising because Plaintiff complied with my procedural rules in her own motion for partial summary judgment.  I have reviewed the body of Plaintiff's response in comparison to the statement of undisputed facts properly offered by Defendant, and have attempted to determine which facts are admitted as true.  I deem admitted the facts that Plaintiff does not deny and that Plaintiff does not clearly dispute through credible, reliable, and admissible evidence.  I urge Plaintiff to comply with my procedural rules in the future.

Plaintiff purchased the policy, Defendant offered for purchase several optional extended PIP coverage options, but did not offer an optional extended PIP coverage option fully compliant with Colorado Revised Statutes section 10–4–710(2)(a)(II). (Def.'s Br. at 3, Statement of Undisputed Material Facts ¶ 4; *deemed admitted in relevant part at* Pl.'s Br. at 5; Compl. ¶ 15.)

The parties dispute whether Defendant explained to Plaintiff the availability and benefits of optional extended PIP benefits. Plaintiff alleges that Plaintiff's insurance agent did not explain or offer enhanced PIP benefits when she purchased the policy. (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts, Statement of Disputed Material Facts ¶ 2, Ex. A at 60, 108, 138 [Dep. of Kimberly Breaux].) Plaintiff makes this allegation despite admittedly having signed a waiver in her policy application that states "[t]he agent has explained the benefits of optional, increased limits of [PIP] and I hereby reject any such coverage not applied for." (Pl.'s Resp., Ex. A at 19–21 [Dep. of Kimberly Breaux]; Def.'s Br., Statement of Undisputed Material Facts, ¶ 2, Ex. A–1 at 2 [Automobile Insurance Application].) Defendant alleges that an agent of Defendant's company explained the benefits of optional increased limits of PIP benefits to Plaintiff, and Plaintiff rejected the optional increased limits in writing. (*Id.*)

Plaintiff's policy contained an endorsement reflecting a $200,000 aggregate limit on optional extended PI. (Def.'s Br., Statement of Material Undisputed Material Facts ¶ 4, Ex. A–2 [PIP Endorsement]; *admitted in relevant part at* Pl.'s Resp. at 13–14; Pl.'s Br. at 6, Resp. to Statement of Undisputed Material Facts, Statement of Undisputed Material Facts ¶¶ 6, 7.)

On September 21, 2001, an automobile struck Plaintiff's automobile from behind. (Def.'s Br., Statement of Undisputed Material Facts ¶ 5; *deemed admitted at* Pl.'s Br., Resp. to Statement of Undisputed Material Facts, Statement of Undisputed Material Facts ¶ 8.) As a

result, Plaintiff suffered injuries and loss of income.  (*Id.*, Statement of Undisputed Material Facts ¶ 5; *deemed admitted at* Pl.'s Br., Resp. to Statement of Undisputed Material Facts, Statement of Undisputed Material Facts ¶ 9.)  Plaintiff exhausted the basic PIP benefits available to her under her policy, namely $50,000 in medical expenses, $50,000 in rehabilitation expenses, and wage loss for one year.  (Def's Br., Statement of Undisputed Material Facts ¶ 6, *deemed admitted at* Pl.'s Br., Resp. to Statement of Undisputed Material Facts, Statement of Undisputed Material Facts ¶ 10.)  Defendant ceased paying benefits to Plaintiff after Plaintiff exhausted the basic PIP benefits available to her under the policy.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 6; *deemed admitted at* Pl.'s Br., Resp. to Statement of Undisputed Material Facts, Statement of Undisputed Material Facts ¶ 10.)

In January 2001, Defendant amended its PIP Endorsement.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 13.)  The amended PIP Endorsement provided optional, additional PIP coverage — "Deluxe PIP Coverage T" — which Defendant alleges is in compliance with Colorado Revised Statutes section 10–4–710(2)(a)(II).  (Def.'s Br., Statement of Undisputed Material Facts ¶ 14, Ex. A–3 at 3 [PIP Endorsement]; *disputed at* Pl.'s Resp. at 16, 18.)

On June 21, 2004, Defendant notified Plaintiff's counsel by letter that Defendant would treat Plaintiff's insurance policy as reformed to provide coverage describe in section 10–4–710(2)(a)(II), subject to a $200,000 aggregate cap for all PIP benefits.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 15, Ex. A–4 [6/21/04 Letter to The Carey Law Firm]; *deemed admitted at* Pl.'s Br., Resp. to Statement of Undisputed Material Facts, Statement of Undisputed Material Facts ¶ 3, Ex. B [6/21/04 Letter to The Carey Law Firm].)

**2.**   *Procedural History*

On February 2, 2004, Plaintiff filed a complaint in this court alleging that Defendant failed to disclose, offer, and provide certain PIP coverage in violation of CAARA. (Compl. ¶¶ 1–2.) Plaintiff asserted claims for: (1) declaratory relief and reformation of the insurance contract in the face of violations of Colorado Revised Statutes sections 10–4–706(4)(a) and 10–4–710; (2) breach of contract for failure to provide PIP coverage and pay PIP benefits; (3) statutory bad faith breach of contract; and (4) breach of the implied covenant of good faith and fair dealing. (*Id.* ¶¶ 28–51.) Defendant filed its answer on March 2, 2004. (Def.'s Answer.)

On June 4, 2004, Plaintiff moved to amend her complaint to bring class action claims against Defendant. (Pl.'s Mot. to Am. Compl. [filed June 4, 2004].) On June 23, 2004, Defendant filed a response opposing Plaintiff's motion to amend. (Def. Am. Family Mut. Ins. Co.'s Opp'n to Pl.'s Mot. to Am. Compl. [filed June 24, 2004].) On June 25, 2004 the magistrate judge recommended I find that collateral estoppel prevents certification of a class action, and it would therefore be futile to permit Plaintiff to amend her complaint. (Recommendation Regarding Pl.'s Mot. to Am. Compl. [filed June 25, 2004].) On July 12, 2004, Plaintiff filed objections to the magistrate's recommendation. (Pl.'s Objections to Recommendation of United States Magistrate [filed July 12, 2004].) On July 23, 2004, Defendant responded to this objection. (Def. Am. Family Mut. Ins. Co.'s Resp. to Pl.'s Objections to the Magistrate Judge's Recommendation Regarding Pl.'s Mot. to Am. Compl. [filed July 23, 2004].) On October 5, 2004, I accepted the recommendation of the magistrate and denied Plaintiff's motion to amend her complaint. (Order and Mem. of Decision [filed Oct. 5, 2004].)

On November 30, 2004, Plaintiff filed a motion for summary judgment on her claims for (1) declaratory relief, requesting that the court recognize that Plaintiff's insurance policy contains unlimited medical expense and wage loss relief under Colorado Revised Statutes section 10–4–710; and (2) breach of contract, with respect only to Defendant's liability. (Pl.'s Br. at 8.) On January 24, 2005, Defendant filed a response to Plaintiff's motion for partial summary judgment. (Def.'s Resp.) On February 7, 2005, Plaintiff filed a reply brief in support of its motion for partial summary judgment. (Pl.'s Resp.)

Also on November 30, 2004, Defendant filed a motion for partial summary judgment requesting (1) dismissal of plaintiff's claims to the extent that the claims rely on Defendant's alleged violation of Colorado Revised Statutes section 10–4–706(4)(a), and (2) approval of the $200,000 aggregate cap on PIP benefits contained in the reformed policy. (Def.'s Br. at 12.) On January 21, 2005, Plaintiff filed a response to Defendant's motion for partial summary judgment. (Pl.'s Resp.) On February 8, 2005, Defendant filed a reply brief in support of its motion for partial summary judgment. (Reply Br. in Supp. of Def. Am. Family Mut. Ins. Co.'s Mot. for Partial Summ. J. [filed Feb. 8, 2005].)

On January 26, 2005, I consolidated this case with Civil Action No. 04–cv–00539, wherein five plaintiffs assert similar individual claims against Defendant. (*See* Courtroom Mins. [filed Jan. 26, 2005].)

## ANALYSIS

### 1. *Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2003); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e).  A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).  The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.**      ***Evaluation of Claims***

Plaintiff asserts four claims against Defendant for: (1) declaratory relief and reformation in the face of violations of Colorado Revised Statutes sections 10–4–706(4)(a) and 10–4–710; (2) breach of contract for failure to provide PIP coverage and pay PIP benefits; (3) wanton and

willful breach of contract; and (4) breach of the covenant of good faith and fair dealing.  (Compl. ¶¶ 28–51.)  I turn to Plaintiff's claim for declaratory relief and reformation first, as the brunt of her claims hinges on those findings.

> **a.    *Declaratory Relief***
>
> **1.    *Alleged Statutory Violations***

Plaintiff's first claim for declaratory relief alleges violations of Colorado Revised Statutes sections 10–4–710(2)(a)(I), 10–4–710(2)(a)(II),  and 10–4–706(4)(a).  (Compl. ¶¶ 30, 31.) Plaintiff argues that Defendant (1) violated section 10–4–710 because it did not offer extended PIP benefits to Plaintiff, and (2) violated section 10–4–706(4) by not presenting written explanations of the extended PIP benefits defined by section 10–4–710 to Plaintiff.  (*Id.*)

> **(A)    *Section 10–4–710(2)(a)(I)***

Section 10–4–710(2)(a)(I) required that insurers offer extended PIP coverage providing for "[c]ompensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitation."[4]  Colo. Rev. Stat. § 10–4–710(2)(a)(I).  Defendant had PIP coverage options in place that were compliant with this section.  (*See* Def.'s Br., Ex. A-2 at 2–3 [PIP Endorsement].)  The PIP endorsement attached to Plaintiff's policy refers to multiple available PIP coverage options that provide for compensation without regard to fault for medical and nonmedical remedial expenses with no dollar or time limits, subject to a $200,000 aggregate limit. *Id.*

---

[4]Again, as per section 10–4–710(2)(b), insurers could place an aggregate limit of $200,000 on complying policies offering the extended PIP coverage described in section 10–4–710.  Colo. Rev. Stat. § 10–4–710(2)(b).

Further, Defendant offered this extended PIP coverage to Plaintiff.  Plaintiff admits to having signed a waiver in her policy application captioned in capital letters, "NO-FAULT OPTIONAL COVERAGE REJECTION," that states "[t]he agent has explained the benefits of optional, increased limits of [PIP] and I hereby reject any such coverage not applied for."  (Pl.'s Resp., Ex. A at 19–21 [Dep. of Kimberly Breaux]; Def.'s Br., Statement of Undisputed Material Facts, ¶ 2, Ex. A–1 at 2 [Automobile Insurance Application].)  It is a fundamental principle of law that, absent fraud or concealment, a person who signs a document is presumed to have knowledge of the document's contents, independent of whether that person has read the document.  *See Day v. Snowmass Stables*, 810 F. Supp. 289, 294 (D. Colo. 1993) (noting that in the absence of fraud or concealment, one who has signed a document without reading it cannot deny knowledge of its contents).  Here, Plaintiff alleges no fraud or concealment and signed the waiver.  Therefore Plaintiff is charged with the knowledge that she rejected the optional extended PIP coverage.  Plaintiff rejected the extended PIP coverage; *a fortiori* she was offered it.  Therefore, Defendant did not violate section 10–4–710(2)(a)(I).

### (B)     Section 10–4–710(2)(a)(II)

Plaintiff alleges, and Defendant admits, that Defendant violated Colorado Revised Statutes section 10–4–710(2)(a)(II).  (Compl. ¶¶ 15, 30; Def.'s Answer ¶¶ 16–18.)  This section required that insurers offer extended PIP coverage providing:

> "[c]ompensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitation and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations."

Colo. Rev. Stat. § 10–4–710(2)(a)(II).  Defendant acknowledged its violation of section

10–4–710(2)(a)(II) in a letter to Plaintiff dated August 2, 2004.  (Pl.'s Br., Ex. A [8/2/04 Letter

to Kimberly Breaux].)  Accordingly, Defendant violated section 10–4–710(2)(a)(II) by its own

admission.

### (C)   Section 10–4–706(4)(a)

Plaintiff also argues that Defendant violated Colorado Revised Statutes section

10–4–706(4)(a) because Defendant did not offer Plaintiff a written explanation of the optional

extended PIP coverage levels described by Colorado Revised Statutes sections 10–4–710(2)(a)(I)

and 10–4–710(2)(a)(II) .  (Compl. ¶¶ 16–17.)  Section 10–4–706(4) requires a written

explanation of PIP coverages.  Specifically, the section provides:

> [a]n insurer issuing policies providing coverages *as set forth in this section* shall provide
> written explanations of *all available coverages* prior to issuing any policy to an insured.
> After a named insured selects a policy with desired personal injury protection coverage, an
> insurer shall not be under any further obligation to notify such policy holder in any renewal
> or replacement policy of the availability of basic personal injury protection policy or of any
> alternative personal injury protection coverage.

Colo. Rev. Stat. § 10–4–706(4)(a)(emphasis added).  Plaintiff argues that the written explanation

requirement for PIP coverages set forth in Colorado Revised Statutes section 10–4–706 applies

not only to the minimum coverages set forth in the same section, but to all levels of coverage

offered by the insurer, including the enhanced coverages set forth in section 10–4–710.  (Compl.

¶¶ 16–17.)

In support of her position, Plaintiff notes that the Colorado Department of Insurance

adopted the conclusions of a market report purportedly requiring written explanations of all

available coverages to be given to insureds.  (Pl.'s Resp. at 8.)  Defendant, on the other hand,

points to a bulletin prepared by the Colorado Division of Insurance, implying that insurers need not give written explanations of enhanced PIP benefits beyond stating that optional extended PIP coverages are available. (Def.'s Br. at 6.)  Neither Plaintiff's report nor Defendant's bulletin is a controlling or valid authority.  Moreover, neither the Colorado Supreme Court nor the Tenth Circuit has issued a decision interpreting the statute as to this matter.  I turn to the plain language of the statute.

On its face and by its plain meaning, the qualifying phrase "this section" in section 10–4–706(4)(a) refers only to section 10–4–706, the Colorado Revised Statutes section under which 10–4–706(4)(a) is categorized.  *See* Colo. Rev. Stat. § 10–4–706(4)(a).  I find that "coverages as set forth in this section" limits the applicability of section 10–4–706(4)(a) to "all coverages" defined by the same section — section 10–4–706 — and the PIP coverages outlined therein.  *See* Colo. Rev. Stat. § 10–4–706.  Again, Colorado Revised Statutes section 10–4–706 outlines the minimum PIP coverage required by the CAARA.  *See* Colo. Rev. Stat. § 10–4–706(1)(b)–(e).  The only benefits detailed and "set forth in this section" are the mandatory minimum PIP coverages.  It follows that section 10–4–706(4)(a) applies only to the mandatory minimum PIP coverages, and not to the optional extended PIP coverage levels contemplated under section 10–4–710.  *See* Colo. Rev. Stat. § 10–4–706.

In support of her argument to the contrary, Plaintiff also offers the statements of one Representative of the Colorado General Assembly intimating that enhanced PIP options must be "printed out and offered."  (Pl.'s Resp. at 6, Ex. E at 4 [1/29/92 Testimony Concerning House Bill 1175].)  The legislative history does not change the plain meaning of the statute.  "Only when the statute is unclear or ambiguous may the court look beyond the words of the statute to

legislative history or rules of statutory construction." *People v. Goodale*, 78 P.3d 1103, 1107 (Colo. 2003). I find that the statute is clear on its face and by its plain language meaning, and therefore it is not necessary to look beyond the words of the statute itself.

Moreover, Colorado Revised Statutes section 10–4–710 does not expressly require written explanations of the coverages defined by the section. Colo. Rev. Stat. § 10–4–710(2)(a). Section 10–4–710 merely mandates "that the insured shall offer" enhanced benefits. *Id.*; *see Brennan*, 961 P.2d at 554 (noting that the "directive of [section] 10–4–710 is to the insurer, not the insured: all that is required is that the insurer offer these extended benefits"). I decline to extend the writing requirement of one section of the statute to another, and I decline to read a writing requirement into a statute section where none exists. Therefore, I find that Colorado Revised Statutes section 10–4–706(4)(a) did not impose an obligation on Defendant to provide a written explanation of enhanced PIP benefits defined by section 10–4–710, and Plaintiff's claim fails as a matter of law.

Subject to the foregoing, I find that Defendant violated Colorado Revised Statutes section 10–4–710(2)(a)(II), but did not violate either section 10–4–710(2)(a)(I) or section 10–4–706(4)(a). Accordingly, Plaintiff is entitled to summary judgment with respect to Plaintiff's claim for declaratory judgment as to section 10–4–710(2)(a)(II), and Defendant is entitled to summary judgment with respect to Plaintiff's claim for declaratory relief as to sections 10–4–710(2)(a)(I) and 10–4–706(4)(a).

### b.        Reformation of Plaintiff's Policy

### 1.        Propriety of Reformation

Plaintiff seeks reformation of her policy to include enhanced PIP benefits as of the
issuance date of the policy, based on Defendant's admitted failure to offer said benefits fully in
conformity with CAARA statutory requirements.  (Compl. ¶¶ 32–33.)  Generally, under
Colorado law, "[r]eformation of a written instrument is appropriate only when the instrument
does not represent the true agreement of the parties.  The purpose of reformation is to give effect
to the parties' actual intentions."  *Carder, Inc. v. Cash*, 97 P.3d 174, 180–81 (Colo. App. 2003)
(citing *Md. Cas. Co. v. Buckeye Gas Prods. Co.*, 797 P.2d 11, 13 [Colo. 1990]).  As is relevant to
the instant case, "when . . . an insurer fails to offer the insured optional coverage that satisfies
[CAARA], additional coverage in conformity with the offer mandated by statute will be
incorporated into the policy."  *Brennan*, 961 P.2d at 554 (citing *Thompson v. Budget Rent-A-Car
Systems, Inc.*, 940 P.2d 987 (Colo. App. 1996).  Essentially, when a policy is violative of a
statute, reformation is the required remedy to assure that coverage will meet the statutory
minimums.  *Clark II*, 292 F. Supp. 2d at 1266 (citation omitted).  In the instant case, reformation
is appropriate, because Defendant admittedly did not offer a PIP coverage policy in compliance
with Colorado Revised Statutes section 10–4–710(2)(a)(II).  (Def.'s Br. at 3, Statement of
Undisputed Material Facts ¶ 4.)  Defendant directly acknowledged and addressed its failure to
comply with section 10–4–710(2)(a)(II) in a letter to Plaintiff dated August 2, 2004.  (Pl.'s Br.,
Ex. A [8/2/04 Letter to Kimberly Breaux].)  Moreover, Defendant advised Plaintiff's counsel by
letter that it would treat Plaintiff's policy as reformed to provide extended PIP coverage in
compliance with section 10–4–710(2)(a)(II).  (Def.'s Br., Statement of Undisputed Material

Facts, ¶ 15, Ex. A-4 [6/21/04 Letter to the Carey Law Firm]; *admitted by* Pl.'s Br., Resp. to

Statement of Undisputed Material Facts, Statement of Undisputed Material Facts ¶ 3, Ex. B

[6/21/04 Letter to the Carey Law Firm].)

The "trial court has the discretion to ascertain the date of reformation because reformation

is an equitable remedy." *Clark II*, 292 F. Supp. at 1255 (citations omitted).  I find that the

appropriate date of reformation is the date that Defendant became aware that it was not in

compliance with section 10–4–710(2)(a)(II) as to Plaintiff's policy.  Defendant notes that it

amended its PIP Endorsement with an effective date of January 1, 2001, and the amended

endorsement contained an extended PIP coverage option fully compliant with section

10–4–710(2)(a)(II).  (Def.'s Br. at 9, Statement of Undisputed Material Facts ¶ 14.)  Therefore, I

deem the policy reformed as of January 1, 2001.

### 2.     *$200,000 Aggregate Limit*

Plaintiff argues that her policy should be reformed to reflect enhanced PIP coverage in

compliance with section 10–4–710(2)(a)(II) with unlimited coverage.  (Compl. ¶ 33; Pl.'s Resp.

at 11–12, 19.)  Plaintiff maintains that the automatic incorporation of terms by reformation only

includes those terms agreed to by the parties and any missing statutory coverages, and therefore

does not include a $200,000 aggregate limit on coverage.  (Pl.'s Resp. at 12.)  Plaintiff's

arguments are misplaced.

At the time Defendant issued Plaintiff's policy, Defendant attached a PIP Endorsement

outlining a $200,000 aggregate limit to Plaintiff's policy.  (*See* Def.'s Br., Ex. A-2 [PIP

Endorsement].)  Plaintiff does not deny receiving the PIP endorsement, and in fact references it in

her own arguments.  (Pl.'s Resp. at 13–14; Pl.'s Br. at 6, Resp. to Statement of Undisputed

Material Facts, Statement of Undisputed Material Facts ¶¶ 6, 7.)  It is a general contract principle and established Colorado law that "'[a]n insurance policy and an endorsement attached to it must be considered as a single instrument, and they should be construed together in the absence of an internal conflict which cannot be reconciled.'" *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 897 (10th Cir. 1995) (quoting *Martinez v. Hawkeye-Security Ins. Co.*, 195 Colo. 184, 576 [Colo. 1978]).  When called upon to construe an insurance contract, a court must read the contract as a whole and give meaning to all the terms contained within the policy.  *Dome Corp. v. Kennard*, 172 F.3d 1278, 1280 (10th Cir. 1999); *see also Rogers v. Westerman Farm Co.*, 29 P.3d 887, 898 (Colo. 2001) (referring to the notion in contract law that language should be construed as a whole, and specific phrases or terms should not be interpreted in isolation) (citation omitted).

Contrary to Plaintiff's arguments, the PIP endorsement to Plaintiff's policy at the time of issuance clearly establishes a $200,000 aggregate limit.  (*See* Def.'s Br., Ex. A–2.)  The terms and limits of available PIP coverage were presented in Plaintiff's insurance policy application in the graphic form of a table.  *Id.*  The leftmost column represented mandatory minimum PIP coverage, while columns to the right represented extended various levels of enhanced PIP coverage.  *Id.*

Plaintiff essentially argues is that because the graphic representation of the intended aggregate limit does not extend over the leftmost, mandatory minimum PIP coverage column, that no such aggregate limit was in place.  (Pl.'s Resp. at 14.)  Plaintiff's argument is specious at best. Simple addition will show that the maximum benefit available under the mandatory minimum PIP

coverage is $130,900, patently within the $200,000 aggregate limit.[5]  This mathematical truth, coupled with the bolded print in capital letters at the top of the schedule reading "DELUXE PIP AGGREGATE LIMIT — $200,000 per person" lends heavy support to conclusion than that an aggregate limit was indeed in place.  (*See* Def.'s Br., Ex. A–2.)  I find that a $200,000 aggregate limit on extended PIP benefits was in place at the time of issuance of Plaintiff's policy.

Moreover, the statutory limit is proper.  In *Brennan*, the court looked to the plain language of the statute and held that "by its terms, section 10–4–710(2)(b) authorizes a complying policy to place an overall limit of $200,000 upon the total aggregate amount payable." *Brennan*, 961 P.2d at 555 (citing *Colby v. Progressive Cas. Ins. Co.*, 928 P.2d 1298 [Colo.1996]; *Thompson*, 940 P.2d 987; *Brown v. Am. Family Mut. Ins. Co.*, 809 P.2d 1055 [Colo. App. 1990]).

The $200,000 aggregate limit, which is authorized by statute, was unambiguously presented on the PIP endorsement document presented to Plaintiff upon  issuance of her policy, and therefore was part of her policy.  Accordingly, I find no material question of fact as to whether the $200,000 aggregate limit is appropriate and applicable in this matter.  Therefore, Plaintiff is not entitled to summary judgment as to her first claim for declaratory relief that the policy is reformed to an unlimited amount of coverage.  Defendant is entitled to summary judgment as to the applicability and propriety of the $200,000 aggregate limit.

---

[5]Mandatory minimum PIP coverage provides $50,000 for medical expenses, $50,000 for rehabilitation expenses, a maximum of $20,800 for lost wages ($400 per week for 52 weeks), $9100 for essential services ($25 per day for 364 days), and $1,000 for death compensation. (*See* Def.'s Br., Ex. A–2.)

### c.     *Plaintiff's Claim for Breach of Contract*

Plaintiff's breach of contract claim arises out of Defendant's alleged failure to provide and pay extended PIP benefits starting on the date of reformation of the policy. (Compl. ¶¶ 35–39.) Under Colorado law, "a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *SGI Air Holdings II LLC v. Novartis Int'l AG*, 239 F. Supp. 2d 1161, 1170 (D. Colo. 2003) (internal quotation marks and citations omitted).

It is established in Colorado that until an insurance contract is reformed the insurer has no obligation to conform to such "reformed" policy. *Clark I*, 319 F.3d at 1239 (quoting *Brennan*, 961 p.2d at 556).   As discussed in Analysis § b, *supra*, the contract is reformed as of January 1, 2001.  As per my findings regarding reformation, the existence of the contract is established as a matter of law.  The reformation of the contract, in and of itself, is not sufficient to establish Defendant's breach.

Plaintiff has not presented sufficient evidence, or any evidence for that matter, to satisfy the other required elements of her performance of the contract, Defendant's breach, or the damages Plaintiff suffered. *See Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 947 (10th Cir.1990) (noting that moving party must submit enough evidence in support of its motion that it would be entitled to a directed verdict at trial if the evidence is not controverted).  There are genuine issues of fact regarding the fundamental elements of Plaintiff's breach claim. Accordingly, neither party is entitled to summary judgment and Plaintiff's claim survives.

### d.       Plaintiff's Remaining Claims

Plaintiff's remaining claims for statutory bad faith breach of contract and breach of the implied covenant of good faith and fair dealing hinge upon a decision on Plaintiff's breach of contract claim.  Therefore, I decline to address Plaintiff's remaining claims at this juncture.

### 3.     Conclusions

Based on the foregoing it is therefore

ORDERED as follows:

1.        Plaintiff's motion for summary judgment (#34) is GRANTED in part and DENIED in part.  Plaintiff's motion is GRANTED with respect to (1) Plaintiff's claim for declaratory judgment as to violation of section 10–4–710(2)(a)(II) and (2) Plaintiff's claim for reformation.  Plaintiff's motion for summary judgment (#34) is DENIED with respect to Plaintiff's claim for declaratory judgment as to section 10–4–710(2)(a)(I) and section 10–4–706(4)(a).

2.        Defendant's motion for summary judgment (#36) is GRANTED.  Defendant's motion is GRANTED with respect to (1) Plaintiff's claim for declaratory judgment as to violation of sections 10–4–710(2)(a)(I) and 10–4–706(4)(a) and (2) Plaintiff's claim for declaratory relief as to the $200,000 aggregate limit upon reformation.

3.        At the conclusion of the case, after all claims are resolved, the clerk will enter Final Judgment declaring: (1) that Defendant has violated Colorado Revised Statutes section 10–4–710(2)(a)(II) and that Plaintiff is entitled to reformation of the insurance contract so that the contract complies with the statute, with an aggregate coverage limitation of $200,000, and (2) that Defendant has complied with Colorado Revised Statutes sections 10–4–710(2)(a)(I) and

10–4–706(4)(a).  Neither party is entitled to summary judgment with respect to Plaintiff's claim for breach of contract, and that claim remains pending.

    4.      The court will hold a Final Pretrial Conference commencing at 3:45 o'clock p.m. on Friday, **November 18, 2005**, in Courtroom A1001 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.  In preparing for and participating in the conference, the parties and counsel will (1) follow the Instructions for Preparation and Submission of Final Pretrial Order, a copy of which can be downloaded from the court's web site, specifically http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template located at http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord.wpd  These specific web addresses should be used to insure that the proper format is observed.

    Dated this __22ⁿᵈ__ day of September, 2005.

                         BY THE COURT:

                         s/Edward W. Nottingham
                         EDWARD W. NOTTINGHAM
                         United States District Judge