IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–00191–EWN–MJW


KIMBERLEY BREAUX,

      Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
a Wisconsin corporation,

      Defendant.

Consolidated for all purposes with Civil Action No. 04–cv–00539–EWN–MJW


LORI CHAMBERS,
CRYSTAL HAMRICK,
MARTIN PERSICHITTE,
ROBERT W. REFFEL, and
MICHAEL WHITEHEAD,

      Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
a Wisconsin corporation,

      Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is an insurance case.  Plaintiffs Lori Chambers, Crystal Hamrick, Martin Persichitte,

Robert Reffel, and Michael Whitehead allege that by failing to disclose, offer, and provide certain

personal injury protection ("PIP") coverage, Defendant American Family Mutual Insurance Company: (1) violated the Colorado Auto Accident Reparations Act ("CAARA"), specifically Colorado Revised Statute sections 10–4–710 and 10–4–706(4)(a); (2) breached their insurance contracts; (3) breached their insurance contracts in bad faith; and (4) breached the implied covenant of good faith and fair dealing.[1]  This matter comes before the court on: (1) Plaintiffs' "(Unopposed) Motion to Extend Ruling Re: [sic] Summary Judgment," filed January 24, 2006; (2) "Defendant American Family Mutual Insurance Company's Motion for Partial Summary Judgment in Consolidated Case," filed January 27, 2006; (3) "Plaintiff Michael Whitehead's Motion for Partial Summary Judgment," filed January 27, 2006; and (4) "Plaintiffs Lori Chambers' and Robert Reffel's Motion for Partial Summary Judgment on Their Declaratory Relief Claim," filed February 23, 2006.  Jurisdiction is based on diversity of citizenship, pursuant to 28 U.S.C. § 1332 (2006).

---

[1]This matter involves the consolidated cases Civil Action No. 04–cv–00191 and Civil Action No. 04–cv–00539.  In July 2006, Plaintiff Kimberly Breaux dismissed her individual claims against Defendant.  (Stipulation for Dismissal with Prejudice [filed July 10, 2006]; Docket Annotation of Termination [entered July 17, 2006].)  Accordingly, I refer to "Plaintiffs" collectively as contemplating Plaintiffs Chambers, Hamrick, Persichitte, Reffel, and Whitehead only.  I refer to former Plaintiff Breaux individually where required.

**FACTS**

*1.      Factual Background*

*a.      Overview of CAARA*

Before turning to the substance of the motions before the court,  I discuss the portions of CAARA relevant to this case.[2]  Repealed in 2003, CAARA was Colorado's No-Fault Insurance Act.  *See Clark v. State Farm Mut. Auto. Ins. Co.*, 292 F. Supp. 2d 1252, 1258 (D. Colo. 2003) (citing *Nationwide Mut. Ins. Co. v. United States*, 3 F.3d 1392, 1394 [10th Cir. 1993]).  CAARA governed the legal rights of automobile accident victims and their insurers in Colorado and required that motor vehicle owners maintain minimum insurance coverage on their vehicles, including no-fault PIP coverage.  *See* Colo. Rev. Stat. § 10–04–705 (2002); *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 552 (Colo. Ct. App. 1998).  The required mandatory minimum PIP coverage provided for reasonable and necessary medical care, rehabilitative care, lost wages, and death benefits in the event of an accident without regard to fault.  *See* Colo. Rev. Stat. §§ 10–04–706(1)(b)–(e) (2002).  In relevant part, CAARA required insurers to offer coverage providing for:

> [c]ompensation without regard to fault, up to a limit of fifty thousand dollars per person for any one accident, for payment of all reasonable and necessary expenses for medical . . . and nonmedical remedial care and treatment . . . performed within five years after the accident for bodily injury arising out of the use or operation of a motor vehicle;

---

[2] CAARA comprised Colorado Revised Statutes sections 10–4–701 to 10–4–726, *repealed by* Laws 1997, H.B. 97–1209, § 8, effective July 1, 2003.  *See* Colo. Rev. Stat. § 10–4–726 (effective July 1, 2003).  Because CAARA has been repealed, I cite to the 2002 version of Colorado Revised Statutes, except where otherwise required.

> [c]ompensation without regard to fault up to a limit of fifty thousand dollars per person for any one accident within ten years after such accident for payment of the cost of rehabilitation procedures or treatment and rehabilitative occupational training necessary because of bodily injury arising out of the use or operation of a motor vehicle; [and]
>
> [p]ayment of benefits equivalent to one hundred percent of the first one hundred twenty-five dollars of loss of gross income per week, seventy percent of the next one hundred twenty-five dollars of loss of gross income per week, and sixty percent of any loss of gross income per week in excess thereof, with the total benefit under this subparagraph (I) not exceeding four hundred dollars per week, from work the injured person would have performed had he not been injured during a period commencing the day after the date of the accident, and not exceeding fifty-two additional weeks.

Colo. Rev. Stat. §§ 10–4–706(1)(b)(I)–(d)(I) (2002).

CAARA also required that insurers provide and offer an option for increased PIP coverage in exchange for higher premiums. *See id.* § 10–04–710(1); *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1238 (10th Cir. 2003). Specifically, as relevant to the instant case, CAARA required that:

> (2)(a) Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10–4–706, at the option of the named insured:
>
> (I) Compensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitation; or
>
> (II) Compensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitation and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

Colo. Rev. Stat. § 10–04–710(2)(a) (2002).

The *Brennan* court noted that the "directive of [section] 10–4–710 is to the insurer, not the insured: all that is required is that the insurer offer these extended benefits." 961 P.2d at 554. Colorado Revised Statutes section 10–4–710(2)(b) authorized insurers to place an aggregate limit of $200,000 on the total amount payable for complying policies. Colo. Rev. Stat. § 10–4–710(2)(b) (2002).

### b.      *Plaintiffs' Insurance Policies*

Defendant is a Wisconsin corporation licensed to do business in Colorado, and was at all times pertinent engaged in the business of selling automobile insurance policies in the State of Colorado. (Compl. and Jury Demand ¶ 4 [filed Mar. 22, 2004] [hereinafter "Compl."].)  Plaintiffs were, at all times relevant to the instant case, citizens of the state of Colorado. (*Id.* ¶ 3.) I discuss the relevant facts with respect to each Plaintiff below.[3]

### i.      *Plaintiffs Persichitte, Reffel, Chambers, and Hamrick*

Plaintiffs Reffel, Persichitte, Hamrick, and Chambers are all either purchasers of or covered individuals under automobile insurance policies issued by Defendant.  On or about November 21, 1984, Plaintiff Reffel purchased automobile insurance policy number 0500–5323–02–46–FPPA–CO (the "Reffel Policy") from Defendant.  (Def. Am. Family Mut. Ins. Co.'s Mot. for Partial Summ. J. in Consolidated Case; Opening Br. in Supp. of Def. Am. Family Mut. Ins. Co.'s Mot. for Partial Summ. J. in Consolidated Case, Statement of Undisputed

---

[3]To the extent they are relevant, facts regarding former Plaintiff Breaux's policy are set out fully in my September 22, 2005 order. *Breaux v. Am. Family Mut. Ins. Co.*, 387 F. Supp. 2d 1154, 1158–60 (D. Colo. 2005).  Familiarity therewith is thus assumed.

Material Facts ¶ 32, Ex. A–18 [Reffel Policy Status Document] [filed Jan. 27, 2006] [hereinafter "Def.'s Br."]; *admitted at* Pls.' Resp. to Def. Am. Family Mut. Ins. Co.'s Mot. for Partial Summ. J. in Consolidated Case, Resp. to Statement of Undisputed Material Facts ¶ 32 [filed Feb 24, 2006] [hereinafter "Pls.' Resp."].)  At some time in 1987, Carol Miztal purchased automobile insurance policy number 0520–6037–11–51–FPPA–CO (the "Persichitte Policy"), which covered Plaintiff Persichitte, from Defendant.  (*Id.*, Statement of Undisputed Material Facts ¶ 25, Ex. A–13 [Persichitte Policy Abstract]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 25.)  Sometime in 1998, Plaintiff Hamrick purchased automobile insurance policy number 0447–2161–03–63–FPPA–CO (the "Hamrick Policy") from Defendant.  (*Id.*, Statement of Undisputed Material Facts ¶ 17, Ex. A–8 [Hamrick Policy Abstract]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 17.)  On or about October 26, 2000, Plaintiff Chambers purchased automobile insurance policy number 0863–6872–02–86–SPPA–CO (the "Chambers Policy") from a wholly-owned subsidiary of Defendant.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 7, 10; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 7, 10.)

The purchasers of the Reffel, Persichitte, and Hamrick Policies obtained only basic PIP coverage under the respective policies.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 18, 26, 33; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 18, 26, 33.) Defendant admits that at the time of issuance of the Chambers and Hamrick Policies, neither it nor its subsidiaries provided PIP coverage fully compliant with Colorado Revised Statutes section 10–4–710(2)(a)(II).  (*Id.*, Statement of Undisputed Material Facts ¶¶ 11, 19; *admitted at* Pls.'

Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 11, 19.)  Defendant asserts that

Plaintiff Chambers rejected optional increased PIP benefits.  (*Id.*, Statement of Undisputed

Material Facts ¶ 9; *denied at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 32.)

As must be the case to result in the action presently before the court, Plaintiffs Reffel,

Persichitte, Hamrick, and Chambers were each involved in automobile accidents.  On December

3, 1996, Plaintiff Reffel was involved in an accident in the vehicle insured under the Reffel Policy.

(*Id.*, Statement of Undisputed Material Facts ¶¶ 34, 35; *admitted at* Pls.' Resp., Resp. to

Statement of Undisputed Material Facts ¶¶ 34, 35.)  On October 6, 1997, Plaintiff Persichitte was

involved in an accident while driving the vehicle insured under the Persichitte Policy.  (*Id.*,

Statement of Undisputed Material Facts ¶¶ 27, 28; *admitted at* Pls.' Resp., Resp. to Statement of

Undisputed Material Facts ¶¶ 27, 28.)  On July 14, 2001, Plaintiff Chambers was a passenger in

an accident involving the covered vehicle under the Chambers Policy.  (*Id.*, Statement of

Undisputed Material Facts ¶¶ 12, 13; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed

Material Facts ¶¶ 12, 13.)  On October 10, 2002, Plaintiff Hamrick was involved in an automobile

accident in the vehicle insured under the Hamrick Policy.  (*Id.*, Statement of Undisputed Material

Facts ¶¶ 20, 21; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 20,

21.)  After the accidents, PIP benefits claims were filed under the Chambers, Hamrick, Persichitte,

and Reffel Policies.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 14, 22, 29, 36; *admitted in*

*relevant part at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 14, 22, 29, 36.)

On June 21, 2004, Defendant sent letters to counsel for Plaintiffs Reffel, Persichitte,

Hamrick, and Chambers, stating that it would treat those Plaintiffs' respective policies as

reformed to provide for optional PIP coverage as contemplated under Colorado Revised Statutes section 10–4–710(2)(a)(II), subject to an aggregate limit of $200,000.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 15, 23, 30, 37, Ex. A–7 [6/21/04 Chambers Letter], Ex. A–12 [6/21/04 Hamrick Letter], Ex. A–16 [6/21/04 Persichitte Letter], Ex. A–21 [6/21/04 Reffel Letter]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 15, 23, 30, 37.)  Defendant stated that this coverage would apply for all PIP benefits resulting from the respective accidents.  (*Id.*)

### ii. *Plaintiff Whitehead*

Plaintiff Whitehead purchased insurance policies from Defendant to cover three vehicles. (*Id.*, Statement of Undisputed Material Facts ¶¶ 39, 51; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 39, 51.)  Specifically relevant here, on or about December 16, 1993, Plaintiff Whitehead applied to purchase automobile insurance policy number 0379–4356–04–91–FPPA–CO (the "Whitehead Policy") from Defendant.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 42, 45, 51; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 42, 45, 51.)  Plaintiff Whitehead purchased only basic PIP coverage. (*Id.*, Statement of Undisputed Material Facts ¶ 57; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 57.)  Defendant alleges that in purchasing his policies, Plaintiff Whitehead rejected in writing optional, increased PIP coverage.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 42, 44, 50, Ex. A–22 at 2 [1992 Whitehead Application], Ex. A–23 at 2 [1993 Whitehead Application], Ex. A–26 at 2 [2001 Whitehead Application].)

In January 2001, Defendant amended its PIP endorsement to contain a description of PIP coverage fully compliant with Colorado Revised Statutes section 10–4–710(a)(II).  (*Id.*, Statement of Undisputed Material Facts ¶ 46; *admitted in relevant part at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 46; *see also* Pl. Michael Whitehead's Mot. for Partial Summ. J., Ex. H [2001 PIP Endorsement] [filed Jan. 27, 2006] [hereinafter "Pl. Whitehead's Br."].)

On or about May 23, 2001, Plaintiff Whitehead requested coverage changes on the Whitehead Policy.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 51; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 51.)  Defendant's requisite form to effect policy changes contained the following language:

> NO FAULT OPTIONAL COVERAGE REJECTION
> The agent has explained the benefits of optional, increased limits of [PIP] and I hereby reject any such coverage not applied for.

(*Id.*, Ex. A–27 [Policy Change Form].)  Plaintiff Whitehead executed the form at the signature block appearing immediately after the language cited above.  (*Id.*)

On or about May 30, 2001, Plaintiff Whitehead applied to purchase an additional automobile insurance policy from Defendant — policy number 0379–4365–05–94 (the "May 2001 Policy").  (Pl. Whitehead's Br., Statement of Undisputed Material Facts ¶ 12; *admitted at* Def.'s Resp. to Pl. Whitehead's Mot. for Partial Summ. J., Resp. to Statement of Undisputed Material Facts ¶ 12 [filed Feb. 16, 2006] [hereinafter "Def.'s Whitehead Resp."].)

On September 26, 2002, Plaintiff Whitehead was involved in an automobile accident while driving the vehicle covered under the Whitehead Policy.  (Def.'s Br., Statement of Undisputed

Material Facts ¶¶ 58–59; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 58–59.)  Plaintiff Whitehead filed a claim for PIP benefits under the Whitehead Policy. (Def.'s Whitehead Resp., Def.'s Supplemental Statement of Undisputed Facts Pertinent to Pls.' Mot. ¶ 9; *admitted at* Pl. Michael Whitehead's Reply to Def.'s Resp. to Pl. Whitehead's Mot. for Partial Summ. J., Resp. to Def.'s Supplemental Statement of Undisputed Facts Pertinent to Pls.' Mot. ¶ 9 [filed Mar. 24, 2006] [hereinafter "Pl. Whitehead's Reply"].)  Defendant has declined to reform Plaintiff Whitehead's policy to provide the optional PIP coverage contemplated in Colorado Revised Statutes section 10–4–710(2)(a)(II).  (Def.'s Br., Statement of Undisputed Material Facts ¶ 61; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 61.)

**2.**     ***Procedural History***

    ***a.***        ***Former Plaintiff Breaux's Action***

On February 2, 2004, former Plaintiff Breaux filed a complaint in this court alleging that Defendant failed to disclose, offer, and provide certain PIP coverage in violation of CAARA.[4] (Compl. and Jury Demand ¶¶ 1–2 [filed Feb. 2, 2004] [hereinafter "Breaux Compl."].)  On June 4, 2004, former Plaintiff Breaux moved to amend her complaint to bring class action claims against Defendant.  (Pl.'s Mot. to Am. Compl. [filed June 4, 2004].)  On June 25, 2004, the magistrate judge recommended I find that collateral estoppel prevented certification of a class action, and it would therefore be futile to permit amendment of the complaint.  (Recommendation

---

[4]Plaintiff Breaux asserted nearly identical claims to Plaintiffs in the matter presently before the court.  (Breaux Compl. ¶¶ 28–51.)

Regarding Pl.'s Mot. to Am. Compl. [filed June 25, 2004].)  On July 12, 2004, former Plaintiff

Breaux objected to the magistrate judge's recommendation.  (Pl.'s Objections to

Recommendation of United States Magistrate [filed July 12, 2004].)  On October 5, 2004, I

accepted the recommendation and denied former Plaintiff Breaux's motion to amend.  (Order and

Mem. of Decision [filed Oct. 5, 2004].)

On November 30, 2004, former Plaintiff Breaux filed a motion for summary judgment on

her claims for: (1) reformation of her insurance policy to contain unlimited medical expense and

wage loss relief under Colorado Revised Statutes section 10–4–710; (2) declaratory relief,

requesting the court to recognize reformation of her insurance policy; and (3) breach of contract,

with respect only to Defendant's liability.  (Pl.'s Mot. for Partial Summ. J. [filed Nov. 30, 2004].)

Also on November 30, 2004, Defendant moved for partial summary judgment, requesting: (1)

dismissal of former Plaintiff Breaux's claims to the extent that the claims related to Defendant's

alleged violation of Colorado Revised Statutes section 10–4–706(4)(a); and (2) approval of the

$200,000 aggregate cap on PIP benefits contained in the reformed policy.  (Def. Am. Family Mut.

Ins. Co.'s Mot. for Partial Summ. J. [filed Nov. 30, 2004].)

On January 26, 2005, I consolidated former Plaintiff Breaux's case, Civil Action No.

04–cv–00191, with Plaintiffs' case, Civil Action No. 04–cv–00539.  (Courtroom Mins. [filed Jan.

26, 2005].)

On September 22, 2005, I issued an order granting Defendant's motion for summary

judgment and granting in part and denying in part former Plaintiff Breaux's motion.  (*Breaux v.*

*Am. Family Mut. Ins. Co.*, 387 F. Supp. 2d 1154 [D. Colo. 2005] [hereinafter "*Breaux*"].)

Specifically, I found that: (1) Defendant had violated Colorado Revised Statutes section 10–4–710(2)(a)(II); (2) Plaintiff was entitled to reformation of her policy as of January 1, 2001, subject to a $200,000 aggregate limit; and (3) Defendant did not violate Colorado Revised Statutes sections 10–4–710(2)(a)(I) and 10–4–706(4)(a).  (*Id.*)

### b.      Plaintiffs' Action

On March 22, 2004, Plaintiffs filed a complaint in this court.  (Compl.)  Plaintiffs asserted claims for: (1) declaratory relief and reformation of the insurance contract in the face of violations of Colorado Revised Statutes sections 10–4–706(4)(a) and 10–4–710; (2) breach of contract for failure to provide PIP coverage and pay PIP benefits; (3) statutory bad faith breach of contract; and (4) breach of the implied covenant of good faith and fair dealing.  (*Id.* ¶¶ 33–56.)  On April 24, 2004, Defendant filed its answer.  (Def. Am. Family Mut. Ins. Co.'s Answer, Affirmative Defenses, and Jury Demand [filed Apr. 24, 2004].)

### i.      Plaintiffs' Motion to Extend

On January 24, 2006, Plaintiffs Chambers, Hamrick, Persichitte, and Reffel filed a motion, ostensibly unopposed, to extend this court's ruling in *Breaux* to their claims.  ([Unopposed] Mot. to Extend Ruling Re: Summ. J. [filed Jan. 24, 2006] [hereinafter "Pls.' Extend Br."].)  These Plaintiffs argue that they, like former Plaintiff Breaux, purchased their policies during the time period when Defendant did not offer PIP coverage compliant with Colorado Revised Statutes section 10–4–710(2)(a)(II), and therefore are entitled to the same remedies of reformation and declaratory relief that former Plaintiff Breaux received.  (*Id.*)  On January 25, 2006, Defendant filed a preliminary response, in which it asserted that Plaintiffs' motion was not unopposed, as

Plaintiffs represented.  (Def.'s Preliminary Resp. to Pls.' "Unopposed" Mot. to Extend Court's Ruling Regarding Summ. J. [filed Jan. 25, 2006].)  On February 16, 2006, Defendant filed a supplementary response to Plaintiffs' motion, wherein it conceded that the motion was appropriate with respect to Plaintiffs Chambers and Hamrick, but not to the other Plaintiffs. (Def.'s Supplemental Resp. to Pls.' "Unopposed" Mot. to Extend Court's Ruling Regarding Summ. J. [filed Feb. 16, 2006] [hereinafter "Def.'s Extend Resp."].)  On March 24, 2006, Plaintiffs filed a reply in support of their motion.  (Pls.' Reply to Am. Family's Preliminary and Supplemental Resps. to Pls.' Mot. to Extend Ruling [filed Mar. 24, 2006].)

> ### ii. *Defendant's Motion*

On January 27, 2006, Defendant filed a motion for partial summary judgment.  (Def.'s Br.)  Defendant argues: (1) Plaintiffs Persichitte's and Reffel's claims must be dismissed as untimely in filing or untimely based on the state of CAARA law; (2) Plaintiff Whitehead's claims must be dismissed because Defendant complied with CAARA in issuing his policy; (3) those Plaintiffs entitled to reformation who hold multiple policies may not combine, or "stack," the PIP benefits available to them; (4) any reformed policies are properly subject to a $200,000 limit; and (5) Plaintiffs' claims that Defendant violated the writing requirement under section 10–4–706(4)(a) must be dismissed.  (*Id.*)  On February 24, 2006, Plaintiffs filed a response to Defendant's motion.  ("Pls.' Resp.")  On March 24, 2006, Defendant filed a reply brief in support of its motion.  (Reply Br. in Supp. of Def. Am. Family Mut. Ins. Co.'s Mot. for Partial Summ. J. in Consolidated Case [filed Mar. 24, 2006] [hereinafter "Def.'s Reply"].)

### iii.    *Plaintiff Whitehead's Motion*

On January 27, 2006, Plaintiff Whitehead filed a motion for partial summary judgment. (Pl. Whitehead's Br.)  Plaintiff Whitehead argues that the offer Defendant made in connection with his 2001 policy purchase was violative of Colorado Revised Statutes section 10–4–710. (*Id.*)  On February 16, 2006, Defendant responded to Plaintiff Whitehead's Motion.  (Def.'s Whitehead Resp.)  On March 24, 2006, Plaintiff Whitehead filed a reply brief in support of his motion.  (Pl. Whitehead's Reply.)

### iv.    *Plaintiffs Chambers and Reffel's Motion*

On February 23, 2006, Plaintiffs Chambers and Reffel filed a joint motion for partial summary judgment.[5]  (Pls. Lori Chambers' [sic] and Robert Reffel's Mot. for Summ. J. on their Declaratory Relief Claim [filed Feb. 23, 2006] [hereinafter "Pls. Chambers and Reffel's Br."].)  Plaintiffs Chambers and Reffel argue they: (1) are entitled to summary judgment on their claims for declaratory relief; and (2) may "stack," or combine, their available PIP benefits under their insurance policies.  (*Id.*)  On March 27, 2006, Defendant filed a response to Plaintiffs Chambers and Reffel's motion.  (Def.'s Resp. Br. to Pls. Chambers' [sic] and Reffel's Mot. for Summ. J. [filed Mar. 27, 2006] [hereinafter "Def.'s Chambers and Reffel Resp."].)  On April 24, 2006, Plaintiffs Chambers and Reffel filed a reply brief in support of their motion.  (Pls.' Lori Chambers'

---

[5]The cut-off date for dispositive motions in this case was January 27, 2006.  (Min. Order [filed Dec. 13, 2005].)  On February 21, 2006, I granted Plaintiffs' motion for leave to file an additional motion for partial summary judgment on or before February 23, 2006.  (Min. Order [filed Feb. 21, 2006].)  Accordingly, I consider Plaintiffs Chambers and Reffel's motion to be timely.

[sic] and Robert Reffel's Reply in Supp. of Mot. for Partial Summ. J. on their Declaratory Relief

Claim [filed Apr. 24, 2006] [hereinafter "Pls. Chambers and Reffel's Reply"].)

## ANALYSIS

### 1.      *Legal Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)

(2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc.*

*v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the

initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the

burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material

matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving

party may not rest solely on the allegations in the pleadings, but must instead designate "specific

facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P.

56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the

governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury

to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir.

1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when

ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d

1467, 1474 (10th Cir. 1985).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment.  *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.      *Evaluation of Claims***

Defendant concedes to extending this court's ruling in *Breaux* to Plaintiffs Chambers and Hamrick, but argues it is entitled to partial summary judgment on Plaintiffs Persichitte, Reffel, and Whitehead's claims.  (Def.'s Br.)  Through various motions, Plaintiffs assert they are each entitled to partial summary judgment on their claims.  (Pls.' Extend Br.; Pls. Chambers and Reffel's Br.; Pl. Whitehead's Br.)  In the interest of clarity, I address Defendant's arguments regarding each Plaintiff's claims separately.

**a.      *Plaintiffs Chambers and Hamrick***

Plaintiffs move to extend this court's prior ruling in *Breaux* to all of the consolidated Plaintiffs in this case.  (Pls.' Extend Br.)  Although Plaintiffs characterize their motion as unopposed, Defendant opposes extension of the *Breaux* rulings to Plaintiffs Persichitte, Reffel, and Whitehead.  (Def.'s Extend Resp. at 2.)  Defendant does not oppose extension of the *Breaux* findings to Plaintiffs Chambers and Hamrick.  (*Id.*)  Accordingly, I grant Plaintiffs' motion to the extent it is unopposed, and extend my prior ruling in *Breaux* to Plaintiffs Chambers and Hamrick.  Plaintiffs Chambers and Hamrick are thus entitled to summary judgment on their claims for: (1) declaratory relief as to Defendant's violation of Colorado Revised Statutes section 10–4–710(2)(a)(II); and (2) reformation of their respective policies.  The Chambers and Hamrick

Policies are reformed, effective as of January 1, 2001, the same date this court found in *Breaux*. I address the remaining Plaintiffs in turn.

### b.      Plaintiffs Persichitte and Reffel

Defendant argues that it is entitled to summary judgment on all of Plaintiffs Persichitte and Reffel's claims because they are untimely. (Def.'s Br. at 19–24.) Specifically, Defendant argues that Plaintiffs Persichitte and Reffel's claims should fail because: (1) the statute of limitations bars their claims; and (2) Plaintiffs seek reformation of the Persichitte and Reffel Policies to reflect a different version of CAARA than the one active at the time of issuance of those policies. (*Id.*)

### i.      Statute of Limitations

Defendant argues that Plaintiffs Persichitte and Reffel's claims are barred by the statute of limitations. (Def.'s Br. at 21–24.) In response, Plaintiffs Persichitte and Reffel argue that: (1) statute of limitations analysis is not applicable to their equitable reformation claims; and (2) if it applies, the statute of limitations does not bar their claims, because it was tolled by filing complaints in Colorado state court. (Pls.' Resp. at 12–17.) I disagree with regard to Plaintiff Reffel. The parties have not provided this court with sufficient information to formulate an opinion as to Plaintiff Persichitte.

### (1)      Applicability

Plaintiffs argue that because Plaintiffs Persichitte and Reffel's claims for reformation of their respective policies are equitable in nature, statute of limitations analysis is not appropriate.[6]

---

[6]Plaintiffs implicitly admit that Plaintiffs Persichitte and Reffel's legal claims for breach of the insurance contract and statutory bad faith breach are subject to the three-year statute of

(*Id.* at 11–13.)  Indeed, Plaintiffs assert that "a court's application of a statute of limitations to bar an equitable claim would, under Colorado law, constitute reversible error." (*Id.* at 12.)  Plaintiffs contend that due to the equitable nature of their claims at issue, this court must perform an analysis concerning laches, rather than the statute of limitations. (*Id.*)

Curiously, Plaintiffs acknowledge the long-held principle that in performing laches analyses, courts in equity are "'not bound by the statute of limitations, but, in the absence of extraordinary circumstances, [courts] will usually grant or withhold relief in analogy to the statute of limitations relating to actions at law of like character.'" *Brooks v. Bank of Boulder*, 911 F. Supp. 470, 476 (D. Colo. 1996) (quoting *Shell v. Strong*, 151 F.2d 909, 911 [10th Cir. 1945]). Plaintiffs do not argue that any extraordinary circumstances exist in the instant case. (Pls.' Resp., *passim*.)  Still more curiously, Plaintiffs acknowledge that in *Nelson v. State Farm Mut. Auto Ins. Co.*, the Tenth Circuit upheld a district court's dismissal of reformation claims under CAARA as untimely based on a statute of limitations analysis.  419 F.3d 1117 (10th Cir. 2005).  The plaintiff in *Nelson* alleged that the defendant violated CAARA by failing to offer him enhanced PIP coverage, and demanded: (1) reformation of his automobile insurance policy to reflect extended wage-loss PIP benefits; and (2) damages for breach of contract.  *Id.* at 1118.  The *Nelson* court applied a three-year statute of limitations and found the claims, including the reformation claim, untimely.  *Id.* at 1120–21.

_____

limitations. (Pls.' Resp. at 12.)  Plaintiffs Persichitte and Reffel's claims for declaratory relief are arguably subject to the same analysis as the reformation claims.

The relevance of *Nelson* to the instant case ought be evident, given the notable similarity of the claims at issue.  Moreover, it is among the most fundamental of legal tenets that "a federal district court is required to give great weight to the pronouncements of its Court of Appeals, even [when] those pronouncements appear by way of dictum."  *Branch v. Coca-Cola Bottling Co. Consol.*, 83 F. Supp. 2d 631, 634–35 (D.S.C. 2000); *accord Max M. v. Thompson*, 585 F. Supp. 317, 324 (N.D. Ill. 1984).  As ought be patently clear, this court is bound by Tenth Circuit precedent unless and until it is overruled by the Tenth Circuit *en banc* or superseded by a contrary Supreme Court decision.  *See United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990); *Werner v. Colo. State Univ.*, 135 F. Supp. 2d 1137, 1139–40 (D. Colo. 2000).  Accordingly, I apply the Tenth Circuit's apposite findings in *Nelson* to the case at bar.

As noted above, in performing laches analysis, courts apply the statute of limitations relevant to similar actions at law, unless extraordinary circumstances exist.  *Brooks*, 911 F. Supp. at 476.  Also as noted above, Plaintiffs indicate no such extraordinary circumstances.  (Pls.' Resp., *passim*.)  After careful consideration, I find no extraordinary circumstances exist in the instant case to direct this court down an alternative course in its analysis.  *See Nelson*, 419 F.3d at 1120 (citing *Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1230 [Colo. Ct. App. 2000]) (requiring courts merely to list the particular circumstances leading to a departure from applying statute of limitations, not those leading to application thereof).

As is pertinent here, relevant Colorado law contemplated a three-year statute of limitations for CAARA claims.  Specifically, former Colorado Revised Statutes section 13–80–101 mandated that a three-year statute of limitations applied to all actions under CAARA, "regardless of the

theory upon which suit is brought, or against whom suit is brought." Colo. Rev. Stat. §§ 13–80–101, 13–80–101(1)(j) (2002); *see Nelson*, 419 F.3d at 1120 (applying three-year statute of limitations to CAARA claims); *Jones v. Cox*, 828 P.2d 218, 222–23, 225 (Colo. 1992) (same). Further, both the Tenth Circuit and the Colorado Supreme Court have emphasized that an action need only "'originate from,' 'grow out of,' or 'flow from'" CAARA to be deemed as arising under the statute. *Nelson*, 419 F.3d at 1120 (citation omitted). Indeed, "'a strict causal connection between the use or operation of a motor vehicle and the accident'" is not required; "'some causal connection suffices.'" *Id.* (quoting *City & County of Denver v. Gonzales*, 17 P.3d 137, 140–41 [Colo. 2001]). Here, as in *Nelson*, although Plaintiffs Persichitte and Reffel seek the equitable remedy of reformation, their claims clearly arise from "rights exclusively provided under CAARA and from the alleged violation of CAARA." 419 F.3d at 1121. Consequently, in analyzing laches, I deem Plaintiffs Persichitte and Reffel's equitable claims to be of a similar character as actions at law under CAARA, and apply the established three-year statute of limitations.

### (2)    *Accrual of Claims*

Under Colorado law applicable to CAARA, causes of action for breach of contract were "considered to accrue on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence." Colo. Rev. Stat. § 13–80–108(6) (2002). Additionally, the law contained a catch-all provision, which stated that all claims generally would be "deemed to accrue when the injury, loss, damage, or conduct giving rise to the cause of action is discovered or should have been discovered by the exercise of reasonable diligence." *Id*. § 13–80–108(8).

"[T]he issue of when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question of fact for the jury." *Maughan v. S.W. Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985). Accordingly, determination by the court of this issue is not appropriate "unless the evidence is so clear that there is no genuine factual issue." *Id.* (citation omitted). As will be seen, the evidence in the instant case is sufficient to abrogate genuine issues of fact as to Plaintiff Reffel.

Plaintiffs do not directly address the issue of when Plaintiffs Persichitte and Reffel became or should have become aware of their potential claims against Defendant and do not propose a particular accrual date for their claims. (Pls.' Resp. at 15–17.) Instead, Plaintiffs argue that neither Plaintiff Persichitte nor Plaintiff Reffel may be charged with knowledge that: (1) they were entitled to additional PIP benefits; or (2) the offers made to the purchasers of their respective policies were faulty. (*Id.*) In essence, Plaintiffs argue that no statute of limitations ought apply to their claims. Plaintiffs miss the mark. The relevant inquiry before the court is when Plaintiffs Persichitte and Reffel were aware of their damages and the cause thereof. *See* Colo. Rev. Stat. §13–80–108(8) (2002); *Colby v. Progressive Cas. Ins. Co.*, Civil Action No. 04–cv–00761–WDM–BNB, 2006 WL 1816448 at *7 (D. Colo. June 30, 2006).

Plaintiffs Persichitte and Reffel were aware of their alleged damages — that they were no longer receiving PIP benefits payments from Defendant — as of the date Defendant made its final payment. *See Nelson*, 419 F.3d at 1121 (holding plaintiff knew at least by the last date of payment under basic PIP policy that he was not receiving extended PIP benefits). Of course, it follows that the cause was Defendant's refusal to pay further benefits. Here, evidence submitted

by Plaintiffs reflects that Defendant made its final basic PIP benefits payment to Plaintiff Reffel on

November 13, 1998.  (Pls.' Reply to Mot. to Extend, Ex. J at 2 [11/18/04 Letter].)  Accordingly,

Plaintiff Reffel's claims accrued on that date.

The record is not as clear regarding payments made to Plaintiff Persichitte.  Defendant

asserts that its final PIP benefits payment date was no later than October 5, 1998.  (Def.'s Br. at

23.)  Defendant offers no citation to the record in support of its assertion.  (*Id.*)  As the moving

party, Defendant bears the burden to show an absence of evidence to support the nonmoving

party's case; a burden it cannot satisfy with conclusory, unsubstantiated statements.  *Celotex*, 477

U.S. at 325.  This court lacks necessary evidence to establish the final date of PIP benefits

payment to Plaintiff Persichitte, accordingly, the issue of an accrual date for his claims is not an

appropriate matter for this court to determine as a matter of law.

### (3)    *Tolling of the Statute of Limitations*

Plaintiffs argue that class action complaints filed in Colorado state court, in which

Plaintiffs Persichitte and Reffel were members of putative classes, tolled the statute of limitations

in the instant case.  (*Id.* at 17.)  Plaintiffs offer the names of the cases at issue — to wit, *French v.

American Family Mutual Insurance Company* and *Marshall v. American Family Mutual

Insurance Company*[7] — but neither provide filing dates nor attach copies of relevant submissions

---

[7]Plaintiffs also direct the court to *Goldsworthy v. American Family Mutual Insurance Company*.  (Pls.' Resp. at 17.)  As will be seen in the forthcoming analysis, consideration of this case is superfluous.

as attachments. (*Id.*)  In effect, Plaintiffs have tasked the court with ascertaining the filing dates of the complaints themselves and of the court orders denying class status.[8]

On November 13, 2000, Roy Dean French and Christie Tomlinson, represented by Plaintiffs' counsel, filed a complaint against Defendant for CAARA violations in the El Paso County Colorado District Court for the Fourth Judicial District.  (Def. Am. Family Mut. Ins. Co.'s Opp'n to Pl.'s Mot. to Amend Compl., Ex. 1 [El Paso County District Ct. 12/4/02 Order] [filed June 23, 2004] [hereinafter "Def.'s Opp'n"].)  French and Tomlinson moved for class certification in their case.  (*Id.*)  On December 4, 2002, the court denied the putative class, based on: (1) lack of typicality, adequate representation,[9] and commonality in questions of fact and law; (2) failure to satisfy Colorado Rule of Civil Procedure 23(b); and (3) inferiority of class action as a method to resolve the parties' claims.  (*Id.*)  Similarly, on April 21, 2003, Kitt Marshall and Joy Longstreet, also represented by Plaintiffs' counsel, filed a complaint against Defendant for CAARA violations in the Colorado District Court for the Seventeenth Judicial District in Adams County.  (Def.'s Opp'n, Ex. 2 [Adams County District Ct. 11/13/03 Order].)  Marshall and

---

[8]It is not this court's burden to seek, find, and link supporting facts to parties' allegations. Otherwise stated, "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).  I admonish Plaintiffs' indolence and emphasize that such laxity will not be tolerated in future submissions to this court.

[9]Poignantly, the court in *French* found adequate representation to be lacking in part because Defendant had a possible statute of limitations affirmative defense as to the plaintiffs in that case.  (Def.'s Opp'n, Ex. 1 at 9–10 [El Paso County District Ct. 12/4/02 Order] [filed June 23, 2004].)

Longstreet moved for class certification, which the Adams County District Court denied on November 13, 2003.[10] (*Id.*)

Based on the dates in the cases above, Plaintiffs implicitly argue that the statute of limitations was tolled from November 13, 2000 through December 4, 2002, and again from April 21, 2003 through November 13, 2003. Plaintiffs' argument is convincing in part. It is well-established in the law that "'the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.'" *Crown v. Parker*, 462 U.S. 345, 353–54 (1983) (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 [1974]). Further, "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to

---

[10]The court noted in *Marshall* that:

counsel for [p]laintiffs has previously filed a very similar complaint and request for class certification in the District Court for the Fourth Judicial District. That case made very similar claims and requested very similar remedies to those complained of and requested in the within case. . . .

When inquiry was made of Counsel for Plaintiff concerning the fact that it appeared to this court that counsel for Plaintiffs in the El Paso District Court had simply found two more Plaintiffs in Adams County and again filed the same case with different Plaintiffs, he replied "The judge's decision in El Paso District Court was wrong. The deficiencies found by that court were either wrong or have been corrected and in the event this court denies class certification, we will continue to file the case in other Judicial Districts until some District Court grants the requested class certification.["] . . .

[I]t clearly seems to this court and the court finds that such tactics in attempting to secure class action certification is [sic] an abuse of the judicial process and goes well beyond the intent of [Colorado Rule of Civil Procedure] 23.

(Def.'s Opp'n, Ex. 2 at 2–3 [Adams County District Ct. 11/13/03 Order].)

intervene as plaintiffs in the pending action." *Id.* at 354. Importantly, though, "perpetual tolling of the statute of limitations by the filing of repeated class actions is impermissible." *Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987) (citation and internal quotation marks omitted). Indeed, as the Second Circuit has reasoned, the tolling rule "was not intended to be applied to suspend the running of statutes of limitations for class action suits filed after a definitive determination of class certification; such an application of the rule would be inimical to the purposes behind statutes of limitations and the class action procedure." *Id.* I find this reasoning persuasive and apply it to the instant case.

Here, Plaintiff Reffel's claims accrued on November 18, 1998. Nearly two years later, the November 13, 2000 filing of a class action in which Plaintiff Reffel was putative class member tolled the statute of limitations through December 4, 2002, when the class was denied. The second filing of a class action envisioning the same class did not affect the statute of limitations for Plaintiff Reffel's claims. Plaintiffs filed their complaint in this case well over a year later, on March 22, 2004. (Compl.) Approximately three years and three months separate accrual of Plaintiff Reffel's claims and filing of Plaintiffs' complaint. Consequently, I find that Plaintiff Reffel's: (1) legal claims are barred by the three-year statute of limitations; and (2) equitable claims are barred by laches based on application of the analogous statute of limitations. Defendant is therefore entitled to summary judgment on all of Plaintiff Reffel's claims.

### ii.    *CAARA Pre- and Post-1992*

It is undisputed that Defendant issued the Reffel Policy in 1984 and the Persichitte Policy in 1987, well before certain amendments made to CAARA in 1992. (Def.'s Br., Statement of

Undisputed Material Facts ¶¶ 25, 32; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed

Material Facts ¶¶ 25, 32.)  As an alternative to its statute of limitations and laches arguments,

Defendant argues that Plaintiffs Persichitte and Reffel's claims must fail because they seek

reformation of their policies to reflect coverage not required by CAARA at the time of issuance.

(Def.'s Br. at 19–21.)  In light of my findings above, I discuss this argument only as to Plaintiff

Persichitte's claims, although the same analysis would apply equally to Plaintiff Reffel's claims.

> Before 1992, CAARA mandated:

> (2)(a) Every insurer shall offer for inclusion in a complying policy, in addition to
> the coverages described in section 10–4–706, at the option of the named insured:

> (I) Compensation of all expenses of the type described in section 10–4–706(1)(b) without
> dollar or time limitation;

> (II) Payment of benefits equivalent to eighty-five percent of loss of gross income
> per week from work the injured person would have performed had he not been
> injured during the period commencing on the date of the accident.

Colo. Rev. Stat. § 10–4–710(2)(a) (1990).  In 1992, the Colorado General Assembly enacted

House Bill 92–1175, which, in relevant part, amended CAARA to require:

> (2)(a) Every insurer shall offer the following enhanced benefits for inclusion in a
> complying policy, in addition to the basic coverages described in section
> 10–4–706, at the option of the named insured:

> (I) Compensation of all expenses of the type described in section 10–4–706(1)(b)
> without dollar or time limitation; *or*

> (II) *Compensation of all expenses of the type described in section 10–4–706(1)(b)
> without dollar or time limitation and* payment of benefits equivalent to eighty-five
> percent of loss of gross income per week from work the injured person would
> have performed had such injured person not been injured during the period
> commencing on the day after the date of the accident *without dollar or time
> limitations.*

Colo. Rev. Stat. § 10–4–710(2)(a) (1993) (emphasis added).

In their complaint, Plaintiffs clearly reference CAARA as amended after 1992 through their allegations that:

> [a]t the time of issuance of each [Plaintiff's] policy, Defendant was obligated under [section] 10–4–710 to offer additional PIP benefits . . . including (1) medical benefits "without dollar or time limitations," or (2) medical benefits "without dollar or time limitation" [sic] and loss of income benefits "equivalent to eighty-five percent of loss of gross income per week . . . without dollar or time limitations"

(Compl. ¶ 8.)  Indeed, Defendant's alleged failure to comply with the requirements of section 10–4–710(a)(II) as amended is the very crux of Plaintiffs' case.  (*See* Compl.; Pls.' Resp.)

Defendant argues that it is entitled to summary judgment on Plaintiff Persichitte's claims because at the time of issuance, it "was under no obligation to offer [] the optional coverages which became mandated in 1992."  (Def.'s Br. at 20.)  Plaintiffs counter that any policies issued before 1992, but renewed thereafter, are subject to the requirements set forth in the statute.  (Pls.' Resp. at 7.)  In statutory interpretation, the court's task is "to determine and give effect to the intent of the General Assembly."  *Welby Gardens v. Adams County Bd. of Equalization*, 71 P.3d 992, 995 (Colo. 2003).  Further, a statute "must be construed as a whole in order to give consistent, harmonious, and sensible effect to all of its parts."  *Id.*  Considering Colorado Revised Statutes section 10–4–710 as a whole, I find Defendant's interpretation reflects the clear legislative intent of the statute.

Colorado Revised Statutes section 10–4–710(4) expressly related to the 1992 amendments and stated:

> [t]he provisions of subsections (2) and (3) of this section as amended by House Bill 92–1175, enacted at the second regular session of the fifty-eighth general assembly, shall apply to policies *issued on and after* July 1, 1992.

Colo. Rev. Stat. § 10–4–710(4) (1993) (emphasis added). Plaintiffs argue that "[a] renewal *is* an issuance of a policy, for the purposes of [section] 10–4–710," and postulate at length as to why this must be the case. (Pls.' Resp. at 7–11 [emphasis in original].) I must disagree. By the plain language of the statute, the requirements that Plaintiffs seek to impose upon Defendant do not apply to those policies issued before July 1, 1992, including the Persichitte Policy.

In contrast to the language cited above, the Colorado General Assembly mandated that House Bill 92–1176, which amended CAARA in ways not relevant to the issue at hand, "shall apply to all policies *issued or renewed on or after* July 1, 1992." Laws 1992, H.B. 92–1176 § 13 (emphasis added); *see also* Colo. Rev. Stat. § 10–4–710(1) (1993). The obvious difference in language evidences an obvious difference in meaning and intent. Had the Colorado General Assembly intended for House Bill 192–1175, which underlies the amendments in section 10–4–710(2)(a)(II), to apply to all policies issued or renewed after 1992, the language on the face of the statute itself would reflect as much. "Only when the statute is unclear or ambiguous may the court look beyond the words of the statute to legislative history or rules of statutory construction." *People v. Goodale*, 78 P.3d 1103, 1107 (Colo. 2003). I find that section 10–4–710(2)(a)(II) is clear on its face and by its plain language meaning, and it is therefore not necessary to look beyond the words of the statute itself. By the clear language of the statute, the section of the law that Plaintiffs rely on in the main allegations of this case do not apply to the policies issued before 1992. Consequently, Defendant is entitled to summary judgment on

Plaintiff Persichitte's claims arising out of alleged violations of Colorado Revised Statutes section 10–4–710(2)(a)(II).

### c.    *Plaintiff Whitehead*

Both Defendant and Plaintiff Whitehead argue they are entitled to summary judgment on Plaintiff Whitehead's claims.  (Def.'s Br. at 24–28; Pl. Whitehead's Br.)  Defendant argues it is entitled to summary judgment on all of Plaintiff Whitehead's claims because Plaintiff Whitehead voluntarily rejected extended PIP coverage benefits at a time when Defendant offered optional PIP coverage compliant with CAARA.  (Def.'s Br. at 24–28.)  Plaintiff Whitehead asserts that he is entitled to summary judgment on his claims for: (1) declaratory judgment that Defendant violated Colorado Revised Statutes section 10–4–710(2)(a); and (2) reformation of his insurance policy contract.  (Pl. Whitehead's Br. at 14.)  Plaintiff Whitehead's apparent uncertainty as to which policy is at issue in this case complicates this court's analysis.  Plaintiff Whitehead asserts that because he "was not provided with an offer of enhanced PIP coverage either before or after January 1, 2001, his policy should properly be reformed." (*Id.* at 11.)  In his brief in support of his motion for summary judgment, Plaintiff Whitehead asserts that the May 2001 Policy, "Policy No. [sic] 0379–4356–05–94 [] is the subject of this motion." (*Id.*, Statement of Undisputed Material Facts ¶ 12.)  Interestingly, in his reply brief, Plaintiff Whitehead refers to the Whitehead Policy as "the subject of this action, Policy No. [sic] 0379–4356–4–91." (Pl. Whitehead's Reply, Resp. to Def.'s Supplemental Statement of Undisputed Material Facts Pertinent to Pl.'s Mot. ¶ 1.)  Despite the foregoing, it appears Plaintiff Whitehead argues he is entitled to reformation of both the Whitehead Policy and the May 2001 Policy, based on Defendant's violations of section

10–4–710(2)(a) in issuing both policies.  (Pl. Whitehead's Br. at 6–11.)  Additionally, Plaintiff

Whitehead argues that he is entitled to declaratory relief and reformation based on Defendant's

alleged violations of Colorado Revised Statutes sections 10–4–111 and 10–4–706(d).  (*Id.* at

12–14.)  I address the parties' arguments with respect to each policy in turn.

### i.    *The Whitehead Policy*

Defendant argues that it is entitled to summary judgment on Plaintiff Whitehead's claims

because it made statutorily compliant offers of extended PIP benefits to Plaintiff Whitehead on the

Whitehead Policy, which he rejected.  (Def.'s Br. at 24–28.)  Specifically, Defendant asserts that

it amended its PIP endorsement to reflect optional PIP coverage fully compliant with section

10–4–710(2)(a)(II) in January 2001.  (Def.'s Br. at 24.)  Defendant asserts further that on or

about May 23, 2001, Plaintiff Whitehead filed an application to change certain liability and

coverage limits on the Whitehead Policy.  (*Id.* at 25.)  Defendant argues that in the application

process, Plaintiff Whitehead signed a form attesting that: (1) an agent had explained to him the

benefits of optional extended PIP coverage; and (2) he rejected the extended PIP coverage

offered.  (*Id.*)

In support of its arguments, Defendant directs the court to documents Plaintiff Whitehead

signed in the process of amending his coverage under the Whitehead Policy.  (*Id.*, Ex. A–27

[Policy Change Form].)  The document contains a waiver of coverage and a signature block

thereunder, executed by Plaintiff Whitehead.  (*Id.*)  The waiver in question reads:

> NO FAULT OPTIONAL COVERAGE REJECTION
> The agent has explained the benefits of optional, increased limits of [PIP] and I
> hereby reject any such coverage not applied for

(*Id.*)  Defendant then cites the portion this court's decision in *Breaux*, wherein the court held that because former Plaintiff Breaux had signed a similar waiver, she was charged with the knowledge she was rejecting extended PIP coverage.  (Def.'s Br. at 26 [citing *Breaux*, 387 F. Supp. 2d at 1162].)  Defendant oversimplifies the matter at hand.

In *Breaux*, it was undisputed that Defendant attached an endorsement setting forth available levels of PIP coverage to former Plaintiff Breaux's application for insurance.  387 F. Supp. 2d at 1162.  This court held that former Plaintiff Breaux was clearly offered the levels of PIP coverage described in the endorsement, because, as evidenced by the waiver, she rejected them.  *Id.*  Here, Defendant has not presented evidence to suggest that it presented the updated endorsement to Plaintiff Whitehead during the processes of amending the Whitehead Policy.  (Def.'s Br.)  Accordingly, Defendant's argument must fail.  Although it would appear that Plaintiff Whitehead "rejected extended PIP coverage at a time when a fully compliant option under [section] 10–4–710(2)(a)(II) was available," a question of fact remains as to whether Defendant made Plaintiff Whitehead aware of the available compliant coverage.  (*Id.* at 27.)  Consequently, Defendant is not entitled to summary judgment on Plaintiff Whitehead's claims.

Plaintiff Whitehead argues that he is entitled to summary judgment on his claim for reformation of the Whitehead Policy because Defendant admits it did not make offers of enhanced PIP benefits in compliance with Colorado Revised Statutes section 10–4–710(2)(A)(II) until January 1, 2001.  (Pl. Whitehead's Br. at 6.)  In support of his argument, Plaintiff Whitehead cites only a portion Defendant's answer to Plaintiffs' complaint, in which Defendant admitted that it did not have a PIP coverage option compliant with section 10–4–710(2)(A)(II) at the time of issuance

of the Whitehead Policy.  (*Id.*; Def. Am. Family Mut. Ins. Co.'s Answer, Affirmative Defenses, and Jury Demand ¶ 14 [filed Apr. 26, 2004].)  Defendant responds that Plaintiff Whitehead ignores the waiver of additional PIP coverage he signed in May 2001 while amending the Whitehead Policy, as discussed above.  (Def.'s Whitehead Resp. at 7.)  I agree.  A genuine issue of material fact exists as to whether Plaintiff Whitehead's executed waiver related to an offer of compliant coverage.  Consequently, neither Defendant nor Plaintiff Whitehead is entitled to summary judgment on Plaintiff Whitehead's claims relating to the Whitehead Policy.

### ii.    *The May 2001 Policy*

Both Plaintiff Whitehead and Defendant argue they are entitled to summary judgment on Plaintiff Whitehead's claims concerning the May 2001 Policy.  (Pl. Whitehead's Br.; Def.'s Br.) As will be discussed in detail, these claims constitute an impermissible attempt to amend the complaint.  Accordingly, I need not discuss the substance of the parties' arguments relating thereto.  Here, Plaintiff Whitehead admits that "[Defendant] amended its PIP [e]ndorsement with an effective date of January 1, 2001, and the amended endorsement contained an enhanced PIP coverage option fully compliant with [section] 10–4–710(2)(a)(II)."  (Pl. Whitehead's Br. at 11.) By Plaintiff Whitehead's own admission, this situation is not that which Plaintiffs contemplate in their complaint.  In their complaint, Plaintiffs assert they procured policies between 1979 and 1999, during which time a coverage option in compliance with Colorado Revised Statutes section 10–4–710(a)(II) "simply did not exist" and was not offered to them.  (Compl. ¶¶ 13–17; *see also* Am. Scheduling Order at 3 [filed May 23, 2005].)  In contrast, Plaintiff Whitehead admits that, beginning in January 2001 and through when he purchased the May 2001 Policy, Defendant had

available for purchase the required coverage under Colorado Revised Statutes section

10–4–710(2)(a)(II), as reflected by the 2001 PIP endorsement.  (Pl. Whitehead's Br. at 7.)  Still,

Plaintiff Whitehead asserts that because he did not receive an offer of the available compliant

coverage levels in May 2001, he is somehow entitled to reformation of the May 2001 Policy,

effective January 1, 2001.  (*Id.* at 11.)

Setting aside the logical and metaphysical difficulties of reforming a contract to a time that

predates the initial agreement, I note that Plaintiff Whitehead's argument is not contained in

Plaintiffs' complaint, and appears for the first time in Plaintiff Whitehead's motion for partial

summary judgment.  (*See* Compl.; *cf.* Pl. Whitehead's Br.)  Pursuant to Federal Rule of Civil

Procedure 15, courts may construe new claims raised in a plaintiff's summary judgment briefings

as a motion to amend the complaint.  *See* Fed. R. Civ. P. 15 (2006); *Viernow v. Euripides Dev.*

*Corp.*, 157 F.3d 785, 790 n.9 (10th Cir. 1998).  Generally, a plaintiff ought not be prohibited from

pursuing a valid claim due to his failure to set forth in the complaint a theory upon which he could

recover, so long as the "'late shift in the thrust of the case will not prejudice the other party in

maintaining his defense upon the merits.'"  *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090–91

(10th Cir. 1991) (quoting 5 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1219 at 194

[2d ed. 1990]).  Indeed, the Tenth Circuit has held that "'the purpose of fact pleading,' as

provided by [Federal Rule of Civil Procedure] 8(a)(2), is to give the defendant fair notice of the

claims against him without requiring the plaintiff to have every legal theory or fact developed in

detail before the complaint is filed. . . ."  *Id.* at 1091.  Importantly, this pleading standard, albeit

liberal, does not provide for eleventh-hour changes in strategies, arguments, and theories in cases.

"This practice, if permitted, would waste the parties' resources, as well as judicial resources, on discovery aimed at ultimately unavailing legal theories and would unfairly surprise defendants, requiring the court to grant further time for discovery or continuances." *Id.*

In keeping with the foregoing, the Tenth Circuit has held that "untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citations omitted). Here, Plaintiff Whitehead offers no explanation as to why this court should allow an amendment of the complaint at this stage in the case. It is difficult to ascertain — and Plaintiff Whitehead makes no argument to aid the court in its endeavor — why Plaintiff Whitehead could not have presented this argument in a more timely manner. Plaintiff Whitehead's implicit motion to amend is unjustifiably untimely, and is therefore denied.

### iii.    *Additional Alleged Statutory Violations*

Plaintiff Whitehead argues that "during the purchase process," Defendant violated Colorado Revised Statutes sections 10–4–111 and 10–4–706(d)(III)(a). (Pl. Whitehead's Br. at 12–14.) Section 10–4–111 required insurers to create and maintain summary disclosure forms describing the major coverages and exclusions of their policies, and to furnish such forms to applicants upon insurance policy purchase and renewal. Colo. Rev. Stat. § 10–4–111 (2002). The court finds no version of the Colorado Revised Statutes containing a section 10–4–706(d)(III)(a). Section 10–4–706(1)(d)(III)(A) set forth the option that an insured may decline wage-loss income and specified the parties to whom such a decline would apply. *Id.*, §10–4–706(1)(d)(III)(A) (2002). Nonetheless, this issue is of no consequence, because Plaintiff

Whitehead fails to specify the manner in which Defendant allegedly violated the statute section in whichever form it may take.  (Pl. Whitehead's Br. at 12–14.)

Once again, Plaintiff Whitehead's argument is not contained in Plaintiffs' complaint, and appears for the first time in Plaintiff Whitehead's motion for partial summary judgment.  (*See* Compl.; *cf.* Pl. Whitehead's Br.)  As outlined above, under Federal Rule of Civil Procedure 15, courts may construe new claims raised in a plaintiff's summary judgment briefings as a motion to amend the complaint.  *See* Fed. R. Civ. P. 15 (2006); *Viernow*, 157 F.3d at 790 n.9.  Still, "untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation."  *Frank*, 3 F.3d at 1365 (citations omitted).

Here, Plaintiff Whitehead offers no explanation as to why this court should allow an amendment of the complaint at this stage in the case.  Plaintiff Whitehead offers no reason why he could not have presented this argument in a more timely manner, and this court finds none for him.  Plaintiff Whitehead's second implicit motion to amend is unjustifiably untimely, and is therefore denied.

### d.    *Ancillary Issues*

Having made my determination as to Plaintiffs' claims, I turn to three additional issues that the parties have briefed.  Defendant asserts that it is entitled to summary judgment on each Plaintiff's claim for declaratory relief concerning Colorado Revised Statutes section 10–4–706(4). (Def.'s Br. at 12.)  Additionally, the parties request judicial determination on the issues of the applicability of a $200,000 aggregate limit and combining, or "stacking," coverage.  (*Id.* at 12–18; Pls. Chambers and Reffel's Br.)

### i.     Writing Requirement

Plaintiffs argue that Defendant violated Colorado Revised Statutes section

10–4–706(4)(a) through its failure to offer Plaintiffs a written explanation of available coverages

and seek declaratory relief regarding the violation.  (Compl. ¶ 9.)  Defendant argues it is entitled

to summary judgment on Plaintiffs' claim.  (Def.'s Br. at 12.)  Section 10–4–706(4) required

insurers to provide a written explanation of PIP coverages.  Specifically, the section provided:

> [a]n insurer issuing policies providing coverages *as set forth in this section* shall provide
> written explanations of *all available coverages* prior to issuing any policy to an insured.
> After a named insured selects a policy with desired personal injury protection coverage, an
> insurer shall not be under any further obligation to notify such policy holder in any renewal
> or replacement policy of the availability of basic personal injury protection policy or of any
> alternative personal injury protection coverage.

Colo. Rev. Stat. § 10–4–706(4)(a) (2002) (emphasis added).

At the outset, I note that Plaintiffs do not argue that they never received *any* written

explanations of any available benefits from Defendant.  Plaintiffs affirmatively assert that

Defendant issued each Plaintiff a policy containing written explanations of the basic PIP coverage

outlined in section 10–4–706.  (Compl. ¶ 19.)  Plaintiffs contend that Defendant failed to "explain

in writing to each [Plaintiff] the [extended PIP] coverages described in [Colorado Revised

Statutes section] 10–4–710, in violation of [Colorado Revised Statutes section] 10–4–706(4)(a)."

(*Id.* ¶ 16.)  Essentially, Plaintiffs argue that through this failure, Defendant further failed to make

an offer "in a manner reasonably calculated to make an informed decision on whether to purchase

such coverage," as required by CAARA.  (*Id.* ¶ 17.)

Defendant argues that it is entitled to summary judgment on Plaintiffs' claim because: (1) the Reffel and Persichitte Policies were issued before the effective date of the statute; and (2) as this court held in *Breaux*, 387 F. Supp. 2d at 1163, by the plain language of the statute, the writing requirement contained in "section 10–4–706(4)(a) applies only to the mandatory minimum PIP coverages, and not to the optional extended PIP coverage levels contemplated under section 10–4–710." (Def.'s Br. at 11–12.) Plaintiffs do not respond to Defendant's argument. (Pls.' Resp., *passim*.) In responding to a motion for summary judgment, the nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). Based on the foregoing, I deem Defendant's motion confessed in this respect. Defendant is entitled to summary judgment on Plaintiffs' claim for declaratory relief regarding alleged violations of Colorado Revised Statutes section 10–4–706(4)(a).

### ii.    *$200,000 Limit*

Defendant asserts it is entitled to summary judgment by way of a judicial declaration that any of Plaintiffs' policies subject to reformation is also subject to a $200,000 aggregate cap on PIP-related benefits. (Def.'s Br. at 12–14.) Defendant contends that this court's prior holdings in *Breaux* are dispositive regarding the issue. (*Id.*) More specifically, Defendant argues that at the time of: (1) Plaintiffs Persichitte's and Reffel's accidents, "their policies would have contained [Defendant's] 1991 version of the PIP [e]ndorsement;" and (2) inception of Plaintiffs Chambers and Hamrick's policies, "those policies would have contained the 1999 version of the PIP [e]ndorsement . . . or the 1991 version." (*Id.* at 12.) Without citation to the record or specific

mention of dates, Defendant argues that the Whitehead Policy is also subject to a $200,000 cap, based on the "PIP [e]ndorsement in effect at the time [P]laintiff Whitehead's policy was initially issued." (*Id.* at 13.)  Plaintiffs do not contest Defendant's assertions that they received the PIP endorsements in question.  (Pls.' Resp. at 18–20.)  Instead, Plaintiffs respond that the $200,000 limitation contained in the PIP endorsements is: (1) impermissible by statute, because the policies in question did not contain the requisite coverage or a clear indication of the aggregate limit; and (2) too narrow, and therefore ought be stricken.  (*Id.*)  Plaintiffs' arguments are specious at best.

Regarding the former, Plaintiffs assert that "where there is only evidence that no cap exists, no cap should be incorporated into the reformed contract." (*Id.* at 18, 20.)  In support of this contention, Plaintiffs point the court to the non-binding and wholly inapposite *Thompson v. Budget Rent-A-Car Systems, Inc*., in which the Colorado Court of Appeals held that because the defendant did not include a "$200,000 cap for all benefits," the plaintiffs' benefits were not subject to such a limitation.  940 P.2d 987, 991 (Colo. Ct. App. 1996).  Plaintiffs' reliance is misplaced.  I direct Plaintiffs to this court's previous holdings in *Breaux*:

> It is a general contract principle and established Colorado law that "an insurance policy and an endorsement attached to it must be considered as a single instrument, and they should be construed together in the absence of an internal conflict which cannot be reconciled." *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 897 (10th Cir. 1995) [].  When called upon to construe an insurance contract, a court must read the contract as a whole and give meaning to all the terms contained within the policy.  *Dome Corp. v. Kennard*, 172 F.3d 1278, 1280 (10th Cir. 1999); *see also Rogers v. Westerman Farm Co*., 29 P.3d 887, 898 (Colo. 2001) (referring to the notion in contract law that language should be construed as a whole, and specific phrases or terms should not be interpreted in isolation) (citation omitted).

387 F. Supp. 2d at 1165. Here, as in *Breaux*, the 1991 and 1999 PIP ndorsements both expressly contemplate and clearly establish $200,000 aggregate caps.[11] (*See* Def.'s Br., Ex. A–5 [1999 PIP Endorsement], Ex. A–10 [1991 PIP Endorsement].) Both the 1991 and 1999 PIP endorsements contain graphic charts of Defendant's available PIP coverage. (*Id*.) Both documents also contain identical multi-column-width rows at the top of the charts with bold, capitalized print stating "**DELUXE PIP AGGREGATE LIMIT – $200,000 per person**." (*Id.*) Given the foregoing, Plaintiffs' argument that no evidence of a cap exists does not obtain.

Plaintiffs' argument that the limitation is too narrow to satisfy Colorado Revised Statutes section 10–4–710(2)(b) is similarly unavailing. (Pls.' Br. at 19.) Section 10–4–710(2)(b) provided that complying policies could limit basic and extended PIP benefits "to an aggregate limit of two hundred thousand dollars payable on account of injury to or death of any one person as a result of any one accident arising out of the use or operation of a motor vehicle." Colo. Rev. Stat. § 10–4–710(2)(b) (2002). In the instant case, $200,000 per person limitation appears in the 1991 and 1999 PIP endorsements in bold at the top of the chart setting forth levels of Defendant's offered PIP coverage. (Def.'s Br., Ex. A–5 [1999 PIP Endorsement], Ex. A–10 [1991 PIP Endorsement].) The additional statement that Defendant would pay the benefits described for any injury "caused by an accident due to the use or operation of a motor vehicle" appears on the same page immediately below said chart. (*Id.*) It is beyond question that the word "an" is an indefinite

---

[11]In fact, the 1991 PIP endorsement is the same document this court examined in *Breaux* and found to have a $200,000 aggregate limit in place. (*See* Opening Br. in Supp. of Def.' Am. Family Mit. Ins. Co.'s Mot. for Partial Summ. J., Ex. A–2 [1991 PIP Endorsement] [filed Nov. 30, 2004].)

article used to modify singular nouns and to symbolize a quantity of one.  *See* WEBSTER'S THIRD

NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE, UNABRIDGED 1, 75 (Philip

Babcock Gove, Ph.D. ed., 1986).  The fact that the limitation contained in Defendant's 1991 and

1999 PIP endorsements satisfies Colorado Revised Statutes section 10–4–710(2)(b) obviates any

need to discuss Plaintiffs' arguments regarding the propriety of striking it.  By order of this court,

the $200,000 aggregate cap applies to any of Plaintiffs' policies that are reformed.

> ### iii.    *"Stacking" Coverage*

Defendant asserts that it is "entitled to summary judgment declaring, as a matter of law,

that its liability for PIP benefits to any of the [P]laintiffs is capped at a maximum of $200,000 . . .

regardless of the number of [] policies sought to be implicated."  (Def.'s Br. at 18.)  In their

response to Defendant's argument, Plaintiffs expressly refer to and incorporate Plaintiffs

Chambers and Reffel's arguments contained in their separate motion for summary judgment.

(Pls.' Resp. at 18.)  In turn, Plaintiffs Chambers and Reffel argue they are entitled to summary

judgment by way of a declaration that they may "stack" their coverages under the terms of the

PIP endorsement itself and pursuant to statute.[12]  (Pls. Chambers and Reffel's Br.; Pls. Chambers

and Reffel's Reply.)  Plaintiffs Chambers and Reffel's arguments are disingenuous.

Plaintiffs Chambers and Reffel argue that stacking is allowed pursuant to Colorado

Revised Statutes section 10–4–707(3), which provides in relevant part:

---

[12]"Stacking" is the practice of "aggregating, combining, [or] multiplying . . . limits of
separate policies."  *Estate of Curry v. Farmers Ins. Exch.*, 101 P.3d 1133, 1135 (Colo. Ct. App.
2004) (citation omitted).  Anti-stacking provisions are permissible in Colorado.  *Farmers Ins.
Exch. v. Stever*, 854 P.2d 1230 (Colo. 1993).

> in the event two or more insurers have obligations under complying policies to pay
> benefits to the same person, the limits of coverage available as benefits to such
> person shall be the limits of a single complying policy except to the extent that
> optional coverages purchased for additional premiums on a voluntary basis are
> applicable.

Colo. Rev. Stat. § 10–4–707(3) (2002).  Here, Plaintiffs have not asserted that two or more

insurers are obligated to pay benefits.  (Pls. Chambers and Reffel's Br.)  Indeed, Plaintiffs

Chambers and Reffel underscore that Defendant "is the sole company providing the similar

insurance." (Pls. Chambers and Reffel's Reply at 5.)  The statute section referenced clearly does

not apply in the instant situation.

Further, Plaintiffs Chambers and Reffel argue that the terms of Defendant's PIP

endorsement expressly allow stacking.[13]  (Pls. Chambers and Reffel's Br. at 4–5.)  Specifically,

Plaintiffs Chambers and Reffel point to language in the PIP endorsement relating to when the

insurance provided is to be categorized as primary or excess insurance.  (*Id.*)  The section

Plaintiffs Chambers and Reffel cite states that "[i]f an eligible injured person has other similar

insurance, including self-insurance, for a loss covered by this endorsement, [Defendant] will pay

[its] share according to this endorsement's proportion of the total limits of all similar insurance."

(*Id.*; Def.'s Br., Ex. A–25 at 3 [PIP Endorsement].)  Plaintiffs Chambers and Reffel ignore the

next sentence in the section: "[b]ut, this does not apply to optional benefits purchased by that

eligible injured person for additional premiums on a voluntary basis." (Def.'s Br., Ex. A–25 at 3

---

[13]Plaintiff Chambers and Reffel's briefing also contains various arguments concerning
Plaintiff Reffel's status as a resident relative under additional policies.  (Pls.' Chambers and
Reffel's Reply at 10–14.)  As I have already determined that Plaintiff Reffel's claims are barred by
the statute of limitations, I do not address these arguments. *See Analysis* § 2b, *supra.*

[PIP Endorsement].)  Tellingly, Plaintiffs Chambers and Reffel also ignore the sentence that

precedes the language they cite.  That sentence states, "no eligible injured person shall recover

duplicate benefits for the same elements of loss under this and any similar insurance."  (*Id.*)

Thus, the plain language of the PIP endorsement expressly proscribes stacked coverage.

Moreover, Defendant expressly limits its liability in the PIP endorsement, which provides:

[n]o matter how many persons are insured, policies [] apply, claims are made[,] or
insured motor vehicles to which this coverage applies, [Defendant's] liability for
[PIP] benefits for bodily injury sustained by an en eligible injured person in one
motor vehicle accident is limited . . . .  The total aggregate amount payable for
medical expenses, rehabilitation expenses, work loss, essential expenses, and death
compensation, [sic] shall not exceed the amount sown in the schedule of this
endorsement.

(*Id.*)  As discussed, the amount shown in the schedule is $200,000.  *See Analysis* § 2dii, *supra.*

Read together, the provisions limiting Defendant's liability and proscribing duplicative recovery

leave no question of fact regarding Defendant's policies and practices.  The language of the PIP

endorsement patently precludes stacking of coverages and limits Defendant's liability to

$200,000.  For the reasons set forth above, Defendant's motion is granted and Plaintiffs

Chambers and Reffel's motion is denied.

**3.    *Conclusion***

Based on the foregoing it is therefore ORDERED that:

1.    Plaintiffs' motion to extend the court's prior summary judgment ruling (# 115) is

GRANTED in part and DENIED in part.  The motion is GRANTED to the extent it is

unopposed.  Accordingly, this court's prior ruling with respect to former Plaintiff Kimberly

Breaux's motion for summary judgment is extended to Plaintiffs Chambers and Hamrick. The motion is DENIED as to Plaintiffs Whitehead, Persichitte, and Reffel.

2. Plaintiff Whitehead's motion for partial summary judgment (# 119) is DENIED.

3. Plaintiffs Chambers and Reffel's joint motion for partial summary judgment (# 129) DENIED. The motion is DENIED as moot as to Plaintiff Reffel, and DENIED on its substance as to Plaintiff Chambers.

4. Defendant's motion for partial summary judgment (# 117) is GRANTED in part and DENIED in part. The motion is GRANTED as to: (1) Plaintiffs' claims for declaratory relief concerning violation of the writing requirement under section 10–4–706(4)(a); (2) Plaintiff Whitehead's claims relating to the May 2001 Policy; (3) all of Plaintiff Reffel's claims, which are barred by the statute of limitations; (4) Plaintiff Persichitte's claims under section 10–4–710(a)(II), which are based on an inapplicable version of the law; and (5) Defendant's request for judicial declaration that Plaintiffs may not stack coverage. The motion is DENIED as to Plaintiff Whitehead's claims relating to the Whitehead Policy.

5. Plaintiff Whitehead's claims concerning the Whitehead Policy — other than any claims relating to the existence of a $200,000 aggregate limit, Plaintiffs' ability to stack coverage, and Defendant's alleged violation of Colorado Revised Statutes section 10–4–706(4)(a), which have been resolved — remain pending.

6. Plaintiffs Whitehead, Chambers, and Hamrick's claims for breach of contract remain pending.

7.      At the conclusion of the case, after all claims are resolved, the clerk will enter a final judgment declaring that: (1) Plaintiffs Chambers and Hamrick are entitled to reformation of their insurance contract to correct Defendant's violation of Colorado Revised Statutes section 10–4–710(2)(a)(II), subject to an aggregate coverage limitation of $200,000; (2) Defendant complied with Colorado Revised Statutes sections 10–4–710(2)(a)(I) and 10–4–706(4)(a); and (3) Plaintiffs with reformed policies may not stack coverage in the instant case.

7.      The court will hold a Final Pretrial Conference commencing at 2:15 o'clock p.m. on Thursday, September 21, 2006, in Courtroom A1001 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.  In preparing for and participating in the conference, the parties and counsel will (1) follow the Instructions for Preparation and Submission of Final Pretrial Order, a copy of which can be downloaded from the court's web site, specifically http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template located at http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord.wpd  These specific web addresses should be used to insure that the proper format is observed.

Dated this 31st day of August, 2006

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge