IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–00191–EWN–MJW


KIMBERLEY BREAUX,

      Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
a Wisconsin corporation,

      Defendant.

Consolidated for all purposes with Civil Action No. 04–cv–00539–EWN–MJW


LORI CHAMBERS,
CRYSTAL HAMRICK,
MARTIN PERSICHITTE,
ROBERT W. REFFEL, and
MICHAEL WHITEHEAD,

      Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
a Wisconsin corporation,

      Defendant.

---

**ORDER AND MEMORANDUM OF DECISION**

---

This is an insurance case. Plaintiffs Kimberly Breaux, Lori Chambers, Crystal Hamrick, Martin Persichitte, Robert Reffel, and Michael Whitehead alleged that by failing to disclose, offer, and provide certain personal injury protection ("PIP") insurance coverage, Defendant American Family Mutual Insurance Company: (1) violated the Colorado Auto Accident Reparations Act ("CAARA"), specifically Colorado Revised Statute sections 10–4–710 and 10–4–706(4)(a); (2) breached their insurance contracts; (3) breached their insurance contracts in bad faith; and (4) breached the implied covenant of good faith and fair dealing. Plaintiffs Breaux, Chambers, Hamrick, Persichitte, and Reffel all dismissed their claims against Defendant. Plaintiff Whitehead prevailed on his claims in a four-day trial to jury. This matter comes before the court on "Plaintiff Michael Whitehead's Motion to Increase Punitive Damage Award and Enter Judgment," filed November 16, 2006. Jurisdiction is premised upon diversity of citizenship, pursuant to 28 U.S.C. § 1332 (2006).

## FACTS

### 1.   Factual Background

The facts concerning Plaintiff Whitehead are fully set forth in this court's Order and Memorandum of Decision concerning, in part, Plaintiff Whitehead's motion for summary judgment. (Order and Mem. of Decision [filed Sept. 1, 2006] [hereinafter "Order"].) Familiarity therewith is therefore assumed.

### 2.   Procedural History

On February 2, 2004, Plaintiff Breaux filed a complaint in this court alleging that Defendant failed to disclose, offer, and provide certain PIP coverage in violation of CAARA.

(Compl. and Jury Demand [filed Feb. 2, 2004].)  On March 22, 2004, Plaintiffs Chambers,

Hamrick, Persichitte, Reffel, and Whitehead jointly filed a complaint in this court making

essentially the same allegations as Plaintiff Breaux made against Defendant.  (Compl. and Jury

Demand [filed Mar. 22, 2004] [hereinafter "Compl."].)  On November 30, 2004, Defendant and

Plaintiff Breaux both filed motions for partial summary judgment on Plaintiff Breaux's claims.

(Def. Am. Family Mut. Ins. Co.'s Mot. for Partial Summ. J. [filed Nov. 30, 2004]; Pl.'s Mot. for

Partial Summ. J. [filed Nov. 30, 2004].)  On January 26, 2005, the court consolidated Plaintiff

Breaux's case, Civil Action No. 04–cv–00191, with Plaintiffs Chambers, Hamrick, Persichitte,

Reffel, and Whitehead's case, Civil Action No. 04–cv–00539.  (Courtroom Mins. [filed Jan. 26,

2005].)  On September 22, 2005, the court granted Defendant's motion for summary judgment on

Plaintiff Breaux's claims and granted in part and denied in part Plaintiff Breaux's motion

concerning same.  *Breaux v. Am. Family Mut. Ins. Co.*, 387 F. Supp. 2d 1154 (D. Colo. 2005)

(hereinafter "*Breaux I*").

On January 24, 2006, Plaintiffs Chambers, Hamrick, Persichitte, and Reffel moved to

extend this court's ruling in *Breaux I* to their claims.  ([Unopposed] Mot. to Extend Ruling Re:

Summ. J. [filed Jan. 24, 2006].)  On January 27, 2006, Defendant filed a motion for partial

summary judgment on Plaintiffs Chambers, Hamrick, Persichitte, Reffel, and Whitehead's claims.

(Def. Am. Family Mut. Ins. Co.'s Mot. for Partial Summ. J. in Consolidated Case [filed Jan. 27,

2006].)  Also on January 27, 2006, Plaintiff Whitehead filed a motion for partial summary

judgment on his claims.  (Pl. Michael Whitehead's Mot. for Partial Summ. J. [filed Jan. 27,

2006].)  Finally, on February 23, 2006, Plaintiffs Chambers and Reffel filed a joint motion for

partial summary judgment.  (Pls. Lori Chambers' [sic] and Robert Reffel's Mot. for Summ. J. on

their Declaratory Relief Claim [filed Feb. 23, 2006].)  In July 2006, Plaintiff Kimberly Breaux

dismissed her individual claims against Defendant.  (Stipulation for Dismissal with Prejudice [filed

July 10, 2006]; Docket Annotation of Termination [entered July 17, 2006].)  On September 1,

2006, the court filed an order: (1) granting the motion to extend the ruling in *Breaux I* to

Plaintiffs Chambers and Hamrick and denying the motion as to Plaintiffs Whitehead, Persichitte,

and Reffel; (2) denying Plaintiffs Chambers and Reffel's motion for partial summary judgment; (3)

denying Plaintiff Whitehead's motion for partial summary judgment; and (4) granting Defendant's

motion for partial summary judgment on Plaintiffs Reffel's and Persichitte's claims and denying

the motion on Plaintiff Whitehead's claims on one of his policies.  (Order and Mem. of Decision

[filed Sept. 1, 2006] [hereinafter "*Breaux II*"].)  The court noted that the following claims

remained pending: (1) Plaintiffs Whitehead, Chambers, and Hamrick's claims for breach of

contract; and (2) Plaintiff Whitehead's claims concerning his insurance policy with Defendant —

other than any claims relating to the existence of a $200,000 aggregate limit, his ability to stack

coverage, and any alleged violation of Colorado Revised Statutes section 10–4–706(4)(a).  (*Id.*)

On September 28, 2006, Plaintiff Hamrick dismissed her claims against Defendant.  (Min.

Order [filed Sept. 28, 2006].)  On October 30, 2006, Plaintiff Chambers dismissed her claims

against Defendant.  (Stipulation of Dismissal [filed Oct. 30, 2006].)  Also on October 30, 2006,

Plaintiff Whitehead began a four-day trial to jury of his claims.  (Courtroom Mins. [filed Oct. 30,

2006].)  On November 2, 2006, the jury: (1) found that Defendant had willfully and wantonly

breached its insurance contract with Plaintiff Whitehead and had acted in bad faith; and (2)

awarded Plaintiff Whitehead $250,000 in noneconomic damages arising out of Defendant's bad

faith and $1,000,000 in exemplary damages.  (Redacted Jury Verdict, Special Verdict Form B

[filed Nov. 2, 2006] [hereinafter "Form B"].)  Immediately after the verdict was read, Plaintiff

Whitehead orally moved the court to increase the amount of exemplary damages.  (Courtroom

Mins. [filed Nov. 2, 2006].)  In response, the court deferred entry of judgment and set a briefing

schedule on Plaintiff Whitehead's motion.  (*Id.*)

On November 16, 2006, Plaintiff Whitehead filed a motion to increase the exemplary

damages award and enter judgment.  (Pl. Michael Whitehead's Mot. to Increase Punitive

Damages Award and Enter J. [filed Nov. 16, 2006] [hereinafter "Pl.'s Br."].)  Plaintiff Whitehead

argues that increased exemplary damages are appropriate in this case, because Defendant acted

willfully and wantonly during the pendency of the litigation.  (*Id.* at 3–7.)  Additionally, Plaintiff

Whitehead argues, albeit cursorily, that the court should award him stipulated breach of contract

damages, treble breach damages, statutory interest on breach damages, prejudgment interest,

postjudgment interest, trial costs, and attorney fees.  (*Id.* at 7–8.)  On December 4, 2006,

Defendant responded to Plaintiff Whitehead's motion.  (Def.'s Opp. to Pl. Whitehead's Mot. to

Increase Punitive Damages, and Def.'s Br. Regarding Damages Awardable [filed Dec. 4, 2006]

[hereinafter "Def.'s Resp."].)  Plaintiff Whitehead did not file a supportive reply brief.

## ANALYSIS

### 1.    *Standard of Review*

As in the instant case, an insured may recover damages for bad faith breach of insurance

contract based on traditional tort principles.  *Goodson v. Am. Std. Ins. Co.*, 89 P.3d 409, 415–16

(Colo. 2004). An insured may recover compensatory damages for economic and noneconomic losses in order to be made whole. *Id.* Additionally, where appropriate, an insured may recover exemplary damages in order to punish the insurer and deter wrongful conduct. *Id.*

Colorado Revised Statutes section 13–21–102 provides that a jury may award a prevailing plaintiff exemplary damages over and above actual damages when "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. § 13–21–102 (2006). The jury may only award exemplary damages in an amount lesser than or equal to the amount of actual damages awarded. *Id.* § 13–21–102(1)(a). As is relevant in the instant case, although the decision whether to award exemplary damages is left to the jury, the court may increase or decrease the jury's award. *Id.* § 13–21–102(2)(a)–(c).

The court may reduce or disallow exemplary damages to the extent that the deterrent effect has been achieved, the conduct meant to be addressed has ceased, or the intended purpose of the damages has otherwise been effectuated. *Id.* Alternatively, the court may increase exemplary damages "to a sum not to exceed three times the amount of actual damages," if the plaintiff establishes:

> (a) the defendant has continued the behavior or repeated the action which is the subject of the claim against the defendant in a willful and wanton manner, either against the plaintiff or another person or persons, during the pendency of the case; or
>
> (b) the defendant has acted in a willful and wanton manner during the pendency of the of the action in a manner which has further aggravated the damages of the plaintiff when the defendant knew or should have known such action would produce aggravation.

*Id.* § 13–21–102(3)(a)–(b).  Whether evidence is sufficient to justify an award of exemplary

damages is a question of law.  *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo.

2005).

**2.**    ***Evaluation of Claims***

The parties do not dispute that because the jury awarded Plaintiff Whitehead $250,000 in

compensatory damages, it may only award him $250,000 in exemplary damages.  (Pl.'s Br. at 7;

Def.'s Resp. at 3.)  Plaintiff Whitehead argues that this court should increase the amount of

exemplary damages awarded to the maximum $750,000 allowed by statute, because Defendant

both "continued willful and wanton conduct during the pendency of the litigation" and "did so in a

manner that has further aggravated [Plaintiff Whitehead's damages], when [Defendant] knew or

should have known such action would produce such aggravation."  (Pl.'s Br. at 1.)  Further,

Plaintiff Whitehead argues that because the jury found Defendant breached the insurance contract,

the court should award him: (1) $70,000 in actual damages, an amount to which he asserts the

parties stipulated; and (2) and additional $140,000 in order to effectuate treble damages, because

Defendant's conduct was wanton and willful.  (*Id.* at 7.)  Finally, Plaintiff Whitehead hastily

asserts that he is entitled to prejudgment interest, postjudgment interest, statutory interest on his

breach of contract damages award, trial costs, and attorney fees.  (*Id.* at 7–8.)  Defendant

counters that the court: (1) should not increase the exemplary damages award because the

requisite "extraordinary circumstances" do not exist in this case; and (2) should not award

damages for breach of contract because it performed its duties.  (Def.'s Resp. at 3–4, 10.)

Defendant did not respond to Plaintiff Whitehead's arguments regarding interest, costs, and fees. (*Id.*)  The court addresses Plaintiff Whitehead's arguments in turn.

### a.     *Exemplary Damages Award*

First, Plaintiff Whitehead argues that Defendant's continued bad faith during the pendency of the litigation in this case warrants an increase in exemplary damages under Colorado Revised Statutes section 13–21–102(3)(a).  (Pl.'s Br. at 3–6.)  Plaintiff Whitehead asserts that Defendant willfully and wantonly continued the bad faith conduct underlying his claims, as evidenced by Defendant's: (1) failure to conduct a thorough investigation into whether Plaintiff Whitehead received a compliant offer of enhanced PIP benefits; (2) belated production of only Plaintiff Whitehead's signed rejection of enhanced PIP coverage to demonstrate that he had received a compliant offer; (3) knowledge that Plaintiff Whitehead testified he had not received an offer of enhanced PIP coverage, while Defendant's employee testified she could not recall the precise levels of PIP coverage available; (4) opposition to Plaintiff Whitehead's summary judgment motion and motion to dismiss Plaintiff Whitehead's claims; and (5) "paltry" offer of $250,000 to settle the claims.  (*Id.*)  In essence, Plaintiff Whitehead argues an increase of the exemplary damages is warranted because Defendant chose to litigate the claims, was somewhat slow in responding to discovery requests, and made a too-small offer of settlement.  (*Id.*)  Plaintiff Whitehead's arguments are disingenuous.

Plaintiff Whitehead cites almost no law to support his motion, but does point the court to *Tait v. Hartford Underwriters Insurance Co.*, 49 P.3d 337, 343 (Colo. Ct. App. 2001), to support his contention that "[a]n insurer's conduct during litigation is precisely the conduct the trial court

should focus on in determining whether to increase the award." (*Id.* at 3.)  In *Tait*, the Colorado

Court of Appeals increased the exemplary damages award because the defendant insurer had: (1)

"committed discovery violations in a manner that required the court to hold hearings to insure

compliance;" (2) "delegated to counsel many of its continuing obligations to [the] insured;" and

(3) "complained about [an] expedited trial date" and attempted to remove the case to federal

court twice in the weeks leading up to trial.[1]  49 P.3d at 343.  The egregious behavior

contemplated in *Tait* simply does not exist in the instant case.  Wholly absent are the improper

delegations of responsibility, outright discovery violations, and "transparent" attempts to sidestep

statutory requirements that the defendant committed in *Tait*.  49 P.3d at 343; *see also Coors v.

Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 67 (Colo. 2005) (increasing exemplary damages where

defendant insurer "implemented a patently deceptive and misleading scheme, blatantly obstructed

discovery, and failed to understand its obligations to its policyholders and the public").

Moreover, the *Tait* court expressly noted that increased exemplary damages are not to be

used as a means to inflict "a chilling effect on [an] insurer's ability to contest questionable claims

using legitimate, zealous litigation tactics and strategies."  *Id.*  In September 2006, this court

determined neither party was entitled to summary judgment on Plaintiff Whitehead's claims,

because, despite the evidence presented, genuine issues of fact remained as to whether he received

a compliant offer.  *See Breaux II* at 32.  Given the court's ruling that Plaintiff Whitehead's claims

---

[1]Indeed, the court to which the defendant attempted to remove the case noted its belief that the Congress had not intended for the removal statues to be used to defeat statutory preferential trial dates and noted that the defendant's "repeated requests for removal [were] . . . very transparent attempts to do just that."  *Tait*, 49 P.3d at 343.

could not be resolved as a matter of law, it is markedly difficult to ascertain how the claims could

be characterized as anything other than questionable claims ripe for litigation.  Plaintiff

Whitehead's assertions that Defendant knew the claims would succeed are unsubstantiated, and,

ultimately, irrelevant.  (Pl.'s Br. at 5.)  "[R]esort to a judicial forum is not necessarily bad faith or

unfair dealing on the part of an insurer regardless of the outcome of the suit.  Rather, an insurer

may challenge claims which are fairly debatable."  *Brennan v. Farmers Alliance Mut. Ins. Co.*,

961 P.2d 550, 557 (Colo. Ct. App. 1998).  Accordingly, to increase exemplary damages based on

Plaintiff Whitehead's arguments would flout the court's ruling in *Brennan* and would implement

precisely the chilling effect on insurers' legitimate, zealous opposition of debatable claims

denounced in *Tait*.  This court refuses to do either.

Next, Plaintiff Whitehead briefly argues that this court should increase the exemplary

damages award pursuant to Colorado Revised Statutes section 13–21–102(3)(b), because: (1)

Defendant acted willfully and wantonly during the pendency of the litigation, thereby further

aggravating Plaintiff Whitehead's damages; and (2) Defendant knew or should have known that

its actions would cause such aggravation.  (Pl.'s Br. at 6–7.)  More precisely, Plaintiff Whitehead

asserts that Defendant knew he was experiencing financial hardships due to its failure to pay

enhanced PIP coverage benefits, yet willfully and wantonly refused to extend such coverage and

pay such benefits.  (*Id.* at 6.)  Plaintiff Whitehead asserts further that Defendant knew or should

have known its failure to pay the benefits would aggravate Plaintiff Whitehead's existing damages.

(*Id.*)  Perhaps recognizing its lack of merit, Plaintiff Whitehead cites no law to support his

argument.  (*Id.* at 6–7.)  To act "wantonly" is to do so in a manner "unreasonably or maliciously

risking harm while being utterly indifferent to the consequences." BLACK'S LAW DICTIONARY 1576 (7th ed. 1999). As discussed above, given this court's denial of both parties' motions for summary judgment, Defendant had ample reason to litigate Plaintiff Whitehead's claims and refuse to pay enhanced PIP benefits. *See Breaux II*. Given the reasonableness of Defendant's choices and actions, this court simply cannot find that Defendant acted wantonly by refusing to pay benefits and pursuing litigation of Plaintiff Whitehead's claims. Based on the foregoing analysis, this court finds that an increase in the exemplary damages award is unwarranted under either Colorado Revised Statutes section 13–21–102(3)(a) or section 13–21–102(3)(b).

### b.      *Breach of Contract Damages*

Plaintiff Whitehead requests the court to enter judgment for $70,000 in unpaid PIP benefits, an amount to which he asserts the parties have stipulated, in connection with his successful breach of contract claim. (Pl.'s Br. at 7.) Further, citing the jury's determination that Defendant acted willfully and wantonly, Plaintiff Whitehead requests the court to enter judgment for an additional $140,000 in order to effectuate treble damages. (*Id.* at 7.) Defendant responds that: (1) it did not stipulate to $70,000 in damages for breach; (2) award of any damages for breach is improper, because such an award could only be made if the court were to reform the contract, which Defendant argues the court should not do; and (3) if the court determines that reformation and damages are appropriate, reformation should take place as of the date of this court's order and treble damages should be denied. (Def.'s Br. at 10–13.) The court addresses each issue in turn.

First, as to the amount and nature of the damages, neither party is entirely correct. The parties broached the issue in the following colloquy concerning jury instructions:

| | |
|---|---|
| THE COURT: | So . . . if [the jury] find[s] a breach of contract, in awarding actual damages, it is stipulated that roughly $70,000 is what would have been payable under the enhanced coverage. |
| PLAINTIFF: | That's fine . .  or if [Defendant] would stipulate that if the contract is breached, the parties stipulate that . . . [Plaintiff Whitehead's] damages are $69,500, we'd go along with that also. |
| THE COURT: | What do you think about that, [Defendant]? |
| DEFENDANT: | It's close, Your Honor, the precise figure is $69,312.41. |

* * *

| | |
|---|---|
| THE COURT: | [W]hat [Plaintiff Whitehead] is proposing is that [the court] tell the jury that in the event they find a breach of contract, the parties have stipulated that the damages for that breach are $69,312.41. |
| DEFENDANT: | That actually is fair, Your Honor. |

* * *

| | |
|---|---|
| THE COURT: | [T]he parties have stipulated that if [the jury] find[s] in favor of [Plaintiff Whitehead] on this [breach of contract] claim, the actual damages are the $69,[312.41].  Right? Okay. |
| PLAINTIFF: |  . . . If [Defendant is] stipulating that that is the damage, does the jury even need to get that number[?] |

* * *

[L]ook[ing] at the verdict form, I think [entry of judgment by the court is] what was contemplated, when [there is] a stipulation on the damages.

| | |
|---|---|
| THE COURT: | What's [D]efendant's position? |
| DEFENDANT: | I think that's reasonable, Your Honor. |

* * *

| | |
|---|---|
| THE COURT: | [W]e need to tell [the jury] that [the parties] stipulated as to damages, and the court will do that, how is that? |

-12-

PLAINTIFF:        That's fine.
DEFENDANT:     That's fine.

(Rep.'s Tr. at 3–4, 9 [Nov. 1, 2006 Trial Proceedings] [hereinafter "Rep.'s Tr."].)  Given the

parties' own statements, the court finds that they indeed stipulated to a damages award for breach

of contract in the amount of $69,312.41.  The parties do not dispute that the jury found

Defendant breached the contract.  (*See* Form B at 1; Pl.'s Br. at 7; Def.'s Resp. at 11.)

Nevertheless, Defendant argues that the court should not enter judgment on the stipulated

damages, because "the only contractual agreement which existed between the parties was one

requiring [Defendant] to pay basic PIP benefits, which it did."[2]  (Def.'s Resp. at 11.)

     In short, Defendant ignores the stipulation set forth above and argues that in order for it to

owe damages on the breach of contract claim, Plaintiff Whitehead's insurance policy would have

to be reformed to contain the enhanced PIP coverage at the heart of this case.  (*Id.*)  Defendant

then argues that reformation is not an appropriate remedy because the instant case is readily

distinguishable from other cases in which the court has granted and enforced reformation —

specifically, *Brennan*, 961 P.2d at 550, and *Thompson v. Budget Rent-A-Car*, 940 P.2d 987

(Colo. Ct. App. 1996).  (*Id.* at 11–12.)  Although Defendant is partially correct, its argument

cannot succeed.

---

[2]The court notes that Defendant has made this argument before.  During the conference on
jury instructions, the court warned Defendant: "It is playing with words to say the claim was paid
as appropriate.  The claim wasn't paid as appropriate, because [Plaintiff Whitehead] wanted
enhanced benefits."  (Rep.'s Tr. at 20.)  The court is unimpressed with Defendant's reiteration.

Defendant is undeniably correct that the case at bar is distinguishable from other reformation cases decided in Colorado state and federal courts.  This court recognized as much when it stated:

> reformation is most clearly a remedy in those instances where an insurer didn't even offer any coverage at the time that the insured obtained the policy. . . . [T]here are a number of Colorado cases . . . talking about reformation being the way that the insurer is brought into compliance with Colorado law.  This case is different.  And the court has found no case that is exactly on point factually.

(Rep.'s Tr. at 13.)  Indeed, the *Brennan* court reformed an insurance contract where an insurer failed to offer what the court deemed to be required — namely, enhanced PIP coverage contemplating a specific category of persons.  961 P.2d at 556.  The *Thompson* court did the same where a self-insuring car rental agency failed to offer the plaintiff a particular level of coverage required by statute.  940 P.2d at 990.  Similarly, this court reformed Plaintiffs Breaux's, Chambers's and Hamrick's insurance contracts in the consolidated case presently at bar, because Defendant failed to offer — and, indeed, did not have available for purchase — a certain level of required coverage.  *Breaux I*; *Breaux II*.  Finally, in *Clark v. State Farm Mutual Automobile Insurance Co.*, this court reformed an insurance contract where the insurer failed to offer required enhanced PIP coverage contemplating a specific category of persons.  292 F. Supp. 2d 1252, 1268 (D. Colo. 2003).

Obviously, Plaintiff Whitehead's case is different.  As this court recognized in colloquy with the parties, the issue was not whether Defendant offered or had the requisite coverage levels available for purchase, but:

-14-

whether the offer of coverage was conveyed in a manner that complied with
Colorado law. . . .  If there was not an offer that complied with Colorado law, then
the jury has to decide whether that non-compliance caused damage to [Plaintiff
Whitehead]. . . .  [T]he jury could find that [Defendant's failure] to provide the
adequate [coverage] was not a cause of loss to [Plaintiff Whitehead]. . . .  On the
other hand, . . . the jury could find that [Defendant's] failure to provide that
coverage caused loss. . . .  The loss was the loss that he suffered because he didn't
have the additional coverage.  That is to say, the loss of the $69,[312.41].

The way to look at this is a breach of statute. . . .  [T]he jury needs to decide
whether [Defendant] complied with Colorado law, the jury needs to decide
whether the failure to comply with Colorado law caused damage, and the jury
needs to decide what the damage was, although I guess we've taken away the
question of damages [with the stipulation].  And then that's separate and apart
from the bad faith . . . .

(Rep.'s Tr. at 14–16.)  In other words, in the cases cited above, determination of whether a

violation of a statute had taken place was a question of law for the court; in the instant case, it

was a question of fact for the jury.  Further, in the other cases, the breach and the reformation

were inextricably intertwined: the breach consisted of the failure to offer required coverage, the

reformation involved incorporating the required coverage into the insurance contracts.  In the

instant case, the breach and the remedy are correlated, but more attenuated.  Here, the question of

breach centered on whether Plaintiff Whitehead received an offer that was "reasonably calculated

to permit [Plaintiff Whitehead] to make an informed decision" as to which level of coverage to

purchase.  (*Id*. at 24.)  This breach claim implies that Defendant had a duty to give Plaintiff

Whitehead sufficient information about the available levels of enhanced PIP coverage in order to

allow him to understand what was at stake and decide which level to purchase.  As a remedy,

Plaintiff Whitehead implicitly sought incorporation of the highest level of enhanced PIP coverage

into his policy.

-15-

Thus, although the instant case is factually distinguishable, it is conceptually analogous to the other reformation cases discussed above.  All of the cases are united by a common underlying theme — the insureds received offers of coverage that were somehow deficient and, as a remedy, the courts incorporated levels of coverage corresponding to the deficiencies to correct them.[3]  Given the tenor of the case law and the nature and implications of the parties' stipulation, the court finds that reformation of Plaintiff Whitehead's policy to incorporate enhanced PIP coverage is appropriate.  The court now turns to the question of the effective date of said reformation.

The "trial court has the discretion to ascertain the date of reformation because reformation is an equitable remedy."  *Clark*, 292 F. Supp. 2d at 1255 (citations omitted).  Further, the effective date of reformation is to be determined "based on the particular circumstances of each case."  *Id.* at 1260 (citation and internal quotation marks omitted).  In the court's view, the reformation analysis in this case is most analogous to that in *Brennan*.  The *Brennan* court found that under CAARA, insurers were required to offer enhanced PIP coverage levels containing benefits for pedestrians — something the defendant insurer in the case had not done, and a requirement no court had previously imposed or read into CAARA.  961 P.2d at 553–54.  The *Brennan* court reformed the plaintiff's insurance contract as of the date of the order, reasoning that because the insurer "should not necessarily have anticipated that it would be obligated to pay such benefits."  *Id.* at 556.  This court finds that similar considerations apply in the instant case.  It

---

[3]Such is to say, where an insured was not given an opportunity to select a certain level of coverage, the court incorporated that level into the insured's policy.  As a matter of course, the remedies imposed placed great onus on the insurers, most likely because the insurers were in the best position to prevent the deficiencies from recurring.

is irrefutable that Defendant should not necessarily have anticipated it would have to pay enhanced PIP benefits. After all, as discussed above, the question of breach in this case was a proper subject for litigation and came down to a factual question concerning the sufficiency of an offer. Further, the issue at the crux of Plaintiff Whitehead's claims was, to the best of this court's knowledge, one of first impression. No court had previously analyzed or defined the parameters of whether or when an offer is reasonably calculated to allow a purchaser an opportunity to make an informed decision. *See id.* (applying statutory interpretation contained in the court's order retrospectively to implementation of contract reformation as a remedy, but prospectively to reformation effective date). Accordingly, the effective date of the reformation shall be the date of this Order and Memorandum of Decision. The effective date is especially relevant because, in insurance law, "until an insurance contract is reformed, the insurer has no obligation to conform to such 'reformed' policy." *Id.* (citation omitted).[4] Therefore, Defendant is obligated to pay the stipulated $69,312.41 in damages as of the date of this Order and Memorandum of Decision.

As a final matter concerning the breach of contract damages, Plaintiff Whitehead notes that the jury deemed Defendant's conduct to be willful and wanton and moves the court to award him: (1) $51,450, purportedly representing eighteen percent interest on the stipulated amount for

---

[4]The court recognizes that in *Brennan*, the fact that the contract reformation became effective as of the date of the court's order led to the court's dismissal of the plaintiff's claim for breach. 961 P.2d at 555–56. The court underscores the significant procedural and factual differences between *Brennan* and the instant case. In *Brennan*, the breach of contract claim contemplated the insurer's alleged breach of its duties to pay enhanced PIP benefits. *Id.* Here, the breach concerns only an improper offer, and the parties have stipulated to an amount of damages that implicitly requires reformation of the contract. Thus, unlike in *Brennan*, the act of reformation in this case does not defeat Plaintiff Whitehead's breach claim.

the time period from October 22, 2002 through November 16, 2006; and (2) $140,000 in order to

effectuate treble damages pursuant to Colorado Revised Statutes section 10–4–708(1.8).  (Pl.'s

Br. at 7.)  Section 10–4–708(1.8) provides that an insurer "shall pay interest to the insured on the

benefits recovered at a rate of eighteen percent per annum, with interest commencing *from the

date the benefits recovered were due*."  Colo. Rev. Stat. § 10–4–708(1.8) (2002) (emphasis

added).  As discussed above, the $69,312.41 in damages are due as of the date of this Order and

Memorandum of Decision.  Accordingly, Plaintiff Whitehead's request for $51,450 in interest is

declined.  Plaintiff Whitehead may collect eighteen percent interest per annum on the amount to

be recovered beginning on the date of this Order and Memorandum of Decision.  The effective

date of the reformation similarly affects Plaintiff Whitehead's request for treble damages.  Section

10–4–70(1.8) provides that an insured may collect treble damages "in the event of willful and

wanton failure of the insurer to pay such benefits *when due*."  *Id*. (emphasis added).  Because the

amount in question is not due until the date of this Order and Memorandum of decision, the

statute has not been satisfied.  Plaintiff Whitehead's request is therefore denied.

### c.      *Ancillary Entry of Judgment Issues*

In addition to the foregoing, Plaintiff Whitehead moves the court to grant him costs,

attorney fees, prejudgment interest at a rate of nine percent per annum, and postjudgment interest

"as provided for by law."  (Pl.'s Br. at 8.)  First, Plaintiff Whitehead seeks an award for costs,

pursuant to Colorado Revised Statutes section 13–17–202, which provides that "the plaintiff shall

be awarded actual costs accruing after the offer of settlement to be paid by the defendant," if: (1)

no later than fourteen days before the commencement of trial, the plaintiff makes a settlement

offer the defendant rejects; and (2) the plaintiff ultimately recovers a final judgment in excess of the amount offered.  Colo. Rev. Stat. § 13–17–202(a)(1)(a)(I) (2006).  The court assumes Plaintiff Whitehead has taken the rather surprising procedural step of moving under the Colorado state statute, as opposed to Federal Rule of Civil Procedure 68, because the federal rule only provides for recovery of such costs by a defendant.  *See* Fed. R. Civ. P. 68 (2006).  Independent of Plaintiff Whitehead's reasoning, his motion must fail, as he has not so much as troubled himself to announce to the court the amount he offered Defendant to settle the case.  (Pl.'s Br.)  Without this information, the court has no means by which to evaluate the motion.  Therefore, Plaintiff Whitehead's motion for costs is denied in its present form.  Still, the court notes that generally, "costs other than attorney[] fees shall be allowed as of course to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  As the prevailing party at trial, Plaintiff Whitehead is entitled to his reasonable costs and should file a bill accordingly.

Plaintiff Whitehead also moves for an award of attorney fees, pursuant to an unspecified subsection of Colorado Revised Statutes section 10–4–708.  (Pl.'s Br. at 8.)  Plaintiff Whitehead's one-sentence motion simply cannot suffice.  The court directs Plaintiff Whitehead to United States District Court for the District of Colorado Local Rule 54.3, which requires that motions for attorney fees: (1) be supported by one or more affidavits; (2) contain a detailed description of the services rendered; and (3) summarize the service providers' relevant qualifications and experience.  D.C. COLO.LCivR 54.3 (2006).  Plaintiff Whitehead's motion is denied in its current form.  Plaintiff Whitehead may submit a proper motion pursuant to Local Rule 54 and Federal Rule of Civil Procedure 54.

Plaintiff Whitehead also seeks prejudgment interest at a rate of nine percent per annum, compounded annually and calculated as of March 22, 2004 — the date he filed his complaint — pursuant to Colorado Revised Statute section 13–21–101.[5] (Pl.'s Br. at 8.)  Plaintiff Whitehead does not specify the damages upon which he seeks to collect interest, referring instead to "the noneconomic damages awarded, adding to the amount of damage assessed by the verdict of the jury, or found by the court." (*Id.*)  Plaintiff Whitehead's lack of specificity prompts the court to note that prejudgment interest is not allowed on exemplary damages. *Frontier Exploration, Inc. v. Am. Nat'l Fire Ins. Co.*, 849 P.2d 887, 893 (Colo. Ct. App. 1992).  Still, this fact is essentially irrelevant, because Plaintiff Whitehead's lack of specificity defeats his motion.

Whether to award prejudgment interest is within a district court's discretion. *Resolution Trust v. Fed. Sav. & Loan Ins. Corp.*, 25 F.3d 1493, 1506 (10th Cir. 1994).  Generally, principles of fairness and equity guide a federal court's decision whether an award of prejudgment interest is warranted. *F.D.I.C. v. Rocket Oil Co.*, 865 F.2d 1158, 1160 (10th Cir. 1989).  Prejudgment interest is appropriate when its award serves to compensate the injured party and its award is otherwise equitable. *Overbrook Farmers Union v. Mo. Pac. R.R.*, 21 F.3d 360, 366 (10th Cir. 1994).  Plaintiff Whitehead's motion for prejudgment interest consists of one sentence, wholly

---

[5]The court notes that section 13–21–101 contemplates interest at a rate of nine percent payable on damages awarded in "all actions brought to recover damages for personal injury." Colo. Rev. Stat. § 13–21–101 (2006). Cursory research reveals that section 5–12–201 controls interest on bad faith breach of contract damage awards and provides for a rate of eight percent. *Herod v. Colo. Farm Bureau Mut. Ins. Co.*, 928 P.2s 834, 838 (Colo. Ct. App. 1996). The court urges Plaintiff Whitehead to research the law carefully in his future briefing on prejudgment interest. This court will not kindly look upon misrepresentations of the applicability or state of the law — be they by cunning or by mistake.

lacking argument as to the equity or fairness of an such an award.  (Pl.'s Br. at 8.)  Simply put, Plaintiff Whitehead has given the court no means by which to adjudge his motion.

Moreover, "[p]rejudgment interest on a federal court's judgment in a diversity case is a matter of state law."  *Macsenti v. Becker*, 237 F.3d 1223, 1245 (10th Cir. 2001).  Plaintiff Whitehead is a citizen of Colorado, while Defendant is a Wisconsin corporation.[6]  (Compl. ¶¶ 3–4.)  Accordingly, it is not immediately apparent which state's prejudgment interest statute should control.  *See Mein v. Pool Co. Disabled Int'l Empl. Long Term Disability Benefit Plan*, 989 F. Supp. 1337, 1351–52 (D. Colo. 1998) (delaying award of prejudgment interest where rate was unclear because the parties were diverse).  Neither party has fully briefed the issue.  Plaintiff Whitehead apparently assumes Colorado law applies, while Defendant does not deign to address the issue of prejudgment issue at all.  (Pl.'s Br. at 7; Def.'s Resp.)  For the foregoing reasons, the court finds and concludes that Plaintiff Whitehead has not carried his burden to persuade the court that prejudgment interest ought be awarded.  Accordingly, on the record he has made, the request should be denied.

Finally, Plaintiff Whitehead seeks postjudgment interest "as provided for by law."  (Pl.'s Br. at 8.)  Plaintiff Whitehead's motion is granted.  The judgment shall provide an award of the statutory rate of postjudgment interest.

---

[6]It appears Defendant's principal place of business is also located in Wisconsin.  *See McClure v. Am. Family Mut. Ins. Co.*, 29 F. Supp. 2d 1046, 1050 (D. Minn. 1998).

*3.*     *Conclusion*

Based on the foregoing it is therefore ORDERED that:

1.  Plaintiff Whitehead's motion to increase exemplary damages and enter judgment

(# 217) is GRANTED in part and DENIED in part.

   a.  The motion to enter judgment is GRANTED;

   b.  The motion to enter judgment for $70,000 in damages for breach of contract is

   DENIED;

   c.  The motion to enter judgment for $51,450 in interest on the breach of contract

   damages is DENIED;

   d.  The motion for trebling of the breach of contract damage award is DENIED;

   e.  The motions to enter judgment for $250,000 in compensatory damages and

   $250,000 in exemplary damages for bad faith breach of contract are GRANTED;

   f.  The motion to increase the exemplary damages award is DENIED;

   g.  The motion for prejudgment interest is DENIED;

   h.  The motion for attorney fees is DENIED in its present form;

   i.  The motion for costs is DENIED in its present form; and

   j.  The motion for postjudgment interest is GRANTED.

2.  The clerk shall forthwith enter judgment in favor of Plaintiff Whitehead and against

Defendant on Plaintiff Whitehead's claims.  The damages award shall comprise $250,000 in

compensatory damages for bad faith breach of contract, $250,000 in exemplary damages for bad

faith breach of contract, and $69,312.41 in damages for breach of contract.  The judgment shall

provide for interest at the statutory rate of eighteen percent per annum on the $69,312.41 in breach of contract damages, calculated as of the date of this Order and Memorandum of Decision. The judgment shall also provide for postjudgment interest as allowable by law.

3.  Subject to this court's determination, Plaintiff Whitehead may have his reasonable attorney fees upon filing an application to this court in accordance with Federal Rule of Civil Procedure 54(d)(2) and United States District Court of the District of Colorado Local Rule 54.3.

4.  As the prevailing party at trial, Plaintiff Whitehead may have his reasonable costs upon following the procedures set forth in Federal Rule of Civil Procedure 54(d)(1) and United States District Court of the District of Colorado Local Rule 54.1.

Dated this 13th day of February, 2007

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge