# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Case No. 04-cv-00191-REB-MJW

MICHAEL WHITEHEAD,

    Plaintiff,

v.

AMERICAN FAMILY INSURANCE COMPANY, a Wisconsin corporation,

    Defendant.

## ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matters before me are (1) **Defendant American Family Mutual Insurance Company's ("American Family") Motion for Summary Judgment on Remand and Brief in Support** [#279][1] filed January 29, 2010; and (2) **Plaintiff Michael Whitehead's Motion for Summary Judgment** [#280] filed January 29, 2010. I grant defendant's motion in part and deny it in part and grant plaintiff's motion.

## I. JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1332 (diversity of citizenship).

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. **FED.R.CIV.P**. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265

---

[1] "[#279]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

(1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.  ***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue.  ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995).  By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense.  ***See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation***, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).  Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  ***Concrete Works***, 36 F.3d at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999).

### III.  ANALYSIS

On September 26, 2002, plaintiff was involved in an automobile accident.  At the time of the accident, plaintiff held two separate automobile insurance policies, both issued by defendant.  The first policy, originally issued in December, 1993 (the "1993

policy"), did not offer optional enhanced PIP coverage compliant with the requirements of Colorado's now-defunct No Fault Act, §10-4-710(2)(a)(II), C.R.S. (2002). The second was purchased on May 30, 2001 (the "2001 policy").[2] Plaintiff rejected optional enhanced PIP coverage in writing under both the 1993 policy, both originally and as of the time he renewed coverage in 2001, and the 2001 policy.

Following the accident, plaintiff filed a claim for benefits.[3] When defendant refused to pay benefits beyond basic PIP coverage, plaintiff, together with four other individuals, filed suit.[4] That action was consolidated subsequently with the instant lawsuit. All plaintiffs alleged that defendant failed to disclose, offer, and provide enhanced PIP coverage in compliance with the statutory requirements and engaged in bad faith breach of the insurance contracts.

Prior to trial, plaintiff and defendant filed cross-motions for summary judgment. Relevantly for present purposes, the court[5] found that the complaint failed to assert a claim based on the 2001 policy, and, thus, dismissed that claim. (**Order and Memorandum of Decision** at 32 [#158], entered September 1, 2006.) In addition, the court determined that the anti-stacking provision of the PIP endorsement was

---

[2] In 2003 or 2004, defendant amended its PIP endorsement for insurance policies issued after January 29, 2001, to comply with the No Fault Act.

[3] Although I have scoured the record, I see no allegation or evidence to support a conclusion that plaintiff ever filed a claim under the 2001 policy. Moreover, it is not clear from the record whether the 2001 policy even covers the automobile that was involved in the accident. Nevertheless, as neither party raises these issues, I assume those facts are not relevant and do not address them further.

[4] *Chambers et al. v. American Family Mutual Insurance Co.*, 04-cv-539-EWN-MJW

[5] The case originally was assigned to and tried before former Chief Judge Edward W. Nottingham. Due to Chief Judge Nottingham's subsequent resignation, the case was reassigned to me on remand. (*See* [#274], filed January 30, 2009.)

3

enforceable and, therefore, that any policy subject to reformation was subject to the $200,000 aggregate limit set forth therein. (*Id.* at 37-42)

Plaintiff then proceeded to trial under the 1993 policy only.[6]  The jury found that defendant's offer of optional enhanced PIP coverage was inadequate and that defendant had breached the contract of insurance in bad faith.  (**Redacted Jury Verdicts**, Exhibit 1 [#214] filed November 2, 2006.)  After remitting exemplary damages pursuant to §13-21-102(1)(a), C.R.S., the court entered judgment on the jury's verdict.[7]

On appeal, the Tenth Circuit affirmed the judgment on all grounds, save one. Specifically, the court of appeals concluded that defendant had fair notice of plaintiff's claims under the 2001 policy claim and, thus, that the district court erred in dismissing them prior to trial.  **Breaux v. American Family Mutual Insurance Co.**, 554 F.3d 854, 862-63 (10th Cir. 2009).  However, the court of appeals could not determine on the record before it whether the error in dismissing those claims was harmless and, thus, remanded to this court:

> [Defendant] argues that the court's determination that
> anti-stacking provisions apply removes any financial liability
> it may have under the May 2001 policy, and makes harmless
> any error regarding dismissal of claims based on the policy.
> This argument is not fully responsive.  Questions remain
> whether [defendant's] conduct regarding the May 2001

---

[6]  The claims of all other plaintiffs were either settled or resolved through summary judgment prior to trial.

[7]  Although the jury awarded $1,000,000 in exemplary damage, the court remitted that amount to $250,000 pursuant to §13-21-102(1)(a), C.R.S.., which limits exemplary damages to an amount equal to or lesser than the amount of actual damages.  Plaintiff's motion for treble damages and interest on damages was denied by the court.  Plaintiff was ultimately awarded $250,000 in compensatory damages, $250,000 in exemplary damages, and $69,312.41 in stipulated damages for breach of contract.  (**Final Judgment** [#228] filed on February 27, 2007.)

4

> policy was reasonable, and whether it knew that its conduct was unreasonable or recklessly disregarded that fact. These questions are independent of whether [defendant] had a duty to stack [plaintiff's] policies. Thus, if the district court erred, the error was not necessarily harmless.
>
> We are unable to conclusively answer whether the error was harmless and whether [plaintiff] suffered any compensable damages as a result of [defendant's] actions regarding the May 2001 policy because the district court prematurely dismissed the claim. As a result, we remand this issue to the district court for further proceedings.

*Id.* at 863. The case, thus, comes before me for determination.

In its motion for summary judgment, defendant raises essentially the same argument it did before the Tenth Circuit, namely, that any error in dismissing plaintiff's claims under the 2001 policy is harmless because, by virtue of the anti-stacking provisions of the policies, plaintiff has already received all the financial compensation to which he is entitled. This argument is fine, as far as it goes. Indeed, I agree with defendant that plaintiff cannot pursue any further claim based on denial of benefits under the 2001 policy because he has already received all the compensation to which he is entitled on such a claim. The law of this case provides that plaintiff cannot stack the coverages of his multiple policies and that his total recovery for breach of contract is cabined by the $200,000 aggregate limit of the PIP endorsement. *Id.* at 859-62. Because plaintiff already has received $200,000 in PIP benefits under the 1993 policy,[8] he can recover no additional contractual benefits under the 2001 policy, and defendant's failure to pay such benefits cannot constitute a breach of the contractual

---

[8] The district court's judgment for $69,312.41 for damages for breach of contract represented the difference between the PIP benefits plaintiff actually received under basic PIP and the $200,000 aggregate limit of the policy.

5

duty to do so. To the extent defendant's motion for summary judgment addresses this aspect of plaintiff's bad faith claim, it is well taken.

Nevertheless, as the opinion of the Tenth Circuit makes clear, defendant's argument addresses only one aspect of plaintiff's bad faith breach of insurance contract claim and, therefore, is not totally responsive or dispositive. Under Colorado law, "bad faith is not limited to the decision to grant or deny a claim; rather, bad faith can occur in the unreasonable refusal to investigate a claim and to gather facts." ***Travelers Insurance Co. v. Savio***, 706 P.2d 1258, 1274 n.20 (Colo. 1985). This aspect of bad faith is not rendered harmless simply because plaintiff received all the contractual damages he was due:

> Colorado recognizes that an insurance carrier subjects itself to damages beyond the monetary payments called for by its policy, including punitive damages, if it fails in good faith to consider claims asserted under a policy issued by it. . . .
>
> . . . . [T]he claim is, in either event, separate from, and independent of, any claim under the policy itself.
>
> Thus, in ***Travelers Insurance Co. v. Savio***, *supra*, the supreme court noted that the duty of a workers' compensation insurance carrier to pay benefits under the Workers' Compensation Act is "factually and analytically distinct from its duty to deal in good faith with claimants," although both duties involve a common loss. Determination whether a carrier has exercised good faith, it said, "presents a related, but quite different, question, the resolution of which *does not depend upon the validity of the underlying compensation claim*." [***Id.*** at 1270] (emphasis supplied).
>
> Likewise, in ***Farmers Group, Inc. v. Trimble***, [805 P.2d 419 (Colo. 1991)], the supreme court emphasized that, in the circumstance of bad faith, "it is the affirmative act of the insurer in unreasonably refusing to pay a claim and failing to act in good faith, and *not the condition of nonpayment*, that

6

> forms the basis for liability in tort." [*Id.* at 1142] (emphasis supplied).
>
> The carrier's tort liability, therefore, does not depend upon its liability under the insurance contract.

***Flickinger v. Ninth District Production Credit Association of Wichita, Kansas***, 824 P.2d 19, 24 (Colo. App. 1991) (other internal citations omitted; emphases in ***Flickinger***).[9]  To the extent defendant seeks summary judgment as to this aspect of plaintiff's bad faith claim, its motion must be denied.

Moreover, and as is relevant to plaintiff's motion for summary judgment, the jury's verdict precludes defendant from arguing that its conduct in the investigation and delay in paying plaintiff's claim for benefits do not constitute bad faith.  "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."  ***Parklane Hosiery Co., Inc. v. Shore***, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979).  Because the allegedly preclusive judgment was rendered in a federal district court, federal preclusion law provides the applicable standard of estoppel.  ***Frandsen v. Westinghouse Corp.***, 46 F.3d 975, 977 & n.1 (10th Cir. 1995).  Under these standards, collateral estoppel will bar a claim if four elements are met:

> (1) the issue previously decided is identical with the one

---

[9] For this reason, the fact that defendant has never been found liable for breach of contract with respect to the 2001 policy is not an impediment to the recovery of damages thereunder, and defendant does not argue as much.  ***See Farmers Group, Inc. v. Williams***, 805 P.2d 419, 426 (Colo.1991); ***Williams v. Guaranty National Insurance Co.***, 948 P.2d 14, 16 (Colo. App. 1997); ***Flickinger***, 824 P.2d at 24.

> presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Id.* at 978. Defendant concedes the second and third of these elements, but insists that the issue presented at trial was not identical to that now before the court and, therefore, that it did not have a full and fair opportunity to litigate that issue. I disagree.

During the first trial, the jury was asked to consider, sequentially, questions posed on two separate Special Verdict Forms. First, the jury was required to determine whether defendant "offer[ed] the required enhanced PIP coverages in a manner reasonably calculated to permit the named insured to make an informed decision as to whether to purchase enhanced PIP coverage." (**Special Verdict Form A**, Question 1 at 1 [#214] filed November 2, 2006.) The response of the jury in the negative led it to consider the questions posed on Special Verdict Form B, which included, pertinently for present purposes, whether defendant's conduct was in bad faith. (*See* **Special Verdict Form B**, Question 3 at 2 [#215-2] filed November 2, 2006.) Specifically, Judge Nottingham's instructed the jury as follows:

> In order for the plaintiff to recover from the defendant, American Family Mutual, on the claim of bad faith breach of insurance contract, you must find that the following three propositions have all been proved by a preponderance of the evidence:
>
> First, you must find that American Family acted unreasonably in its handling of the plaintiff's claim for extended PIP coverage.
>
> . . . .

8

> [Unreasonable conduct may include failure to] [k]eep an insured reasonably apprised of the status of an insured's claim for benefits and conduct an investigation of an insured's claim for benefits based on all reasonable – all available information.
>
> The statutes of Colorado prohibit an insurance company from willfully failing to conduct a reasonable investigation based on all available information.

(Def. Resp. App., Exh. 2 at 1403-1405 [#281-2], filed February 22, 2010.) Clearly, therefore, the jury's determination that defendant acted in bad faith took into consideration defendant's investigation of plaintiff's claim for benefits under the 1993 policy.

Moreover, plaintiff submits, and defendant does not seriously dispute, that the same evidence and arguments would have been presented in support of a claim under the 2001 policy as were actually submitted to the jury for consideration under the 1993 policy. In addition, the same rule of law is applicable in both instances. The two claims are, in fact, intimately related. *See B-S Steel of Kansas, Inc. v. Texas Industries, Inc.*, 439 F.3d 653, 663 (10th Cir. 2006). Given these considerations, I find that the issue presented in the trial and that sought to be adjudicated here are identical.[10]

---

[10] The Tenth Circuit has identified the following factors as "relevant in distinguishing between situations where collateral estoppel is and is not appropriate:"

> Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? Does the new evidence or argument involve application of the same rule of law as that involved in the prior proceeding? Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? How closely related are the claims involved in the two proceedings?

*B-S Steel of Kansas*, 439 F.3d at 663 (quoting **RESTATEMENT (SECOND) OF JUDGMENTS** § 27, cmt. c*.).* "Where these questions can be answered in the affirmative, it is likely that the 'issue' involved in the two

Nor is there any indication that defendant did not otherwise have a full and fair opportunity to litigate this issue during the prior trial:

> The requirement that the party against whom the prior judgment is asserted had a full and fair opportunity to be heard centers on the fundamental fairness of preventing the party from relitigating an issue he has lost in a prior proceeding. Often, the inquiry will focus on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties.

*SIL-FLO, Inc. v. SFHC, Inc*., 917 F.2d 1507, 1521 (10th Cir. 1990) (internal citations omitted). Defendant certainly had adequate incentive to vigorously litigate – and did vigorously litigate – the bad faith issue in the trial. It has neither argued nor demonstrated that it was not allowed to present evidence in support of its position. Nor has does it maintain, much less establish, that the procedures, defenses, and remedies available to it in defending that action were inadequate or that the forum was inconvenient. *See Parklane Hosiery*, 99 S.Ct. at 651 & n.15. Moreover, the relationship of the parties clearly is adversarial and would not have hampered a thorough and vigorous defense of the issue.

Accordingly, plaintiff's motion for summary judgment must be granted. The only question remaining is whether plaintiff is entitled to any additional damages, and if so, in what amount. Although plaintiff clearly is not entitled to a double recovery, it is possible that a reasonable jury could conclude that plaintiff suffered additional damages, beyond those already recovered, as a result of defendant's bad faith in processing his claim

---

proceedings is the same." *Id.*

under the separate 2001 policy.  Theoretically, such a result also might justify a corresponding increase in the amount of exemplary damages.  In any event, defendant does not address the issue, much less attempt to establish otherwise.  Genuine issues of material fact regarding damages – compensatory and punitive – , remain for determination by a jury.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Defendant American Family Mutual Insurance Company's Motion for Summary Judgment on Remand and Brief in Support** [#279] filed January 29, 2010, is **GRANTED IN PART** and **DENIED IN PART**:

   a.  That the motion is **GRANTED** as to plaintiff's claim for bad faith breach of insurance contract based on denial of benefits; and

   b.  That the motion is **DENIED** as to plaintiff's claim for bad faith breach of insurance contract based on the investigation of and delay in the payment of benefits;

2.  That **Plaintiff Michael Whitehead's Motion for Summary Judgment** [#280], filed January 29, 2010, is **GRANTED**; and

3.  That a telephonic setting conference is **SET** for **Tuesday, October 5, 2010**, at **10:00 a.m.** (MDT)**,** to schedule a Trial Preparation Conference and trial on the issue of damages for bad faith breach of insurance contract related to the 2001 policy; provided,

furthermore, that counsel for plaintiff **SHALL ARRANGE** and **COORDINATE** the conference call necessary to facilitate the setting conference.

Dated September 16, 2010, at Denver, Colorado.

**BY THE COURT:**

/s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge